O'BRIEN et al. v. MAYOR, ETC., OF CITY OF NEW YORK.

(Circuit Court, New York County.   June, 1891.)

1. MUNICIPAL CORPORATIONS—POWERS OF AQUEDUCT COMMISSIONERS.
Laws N. Y. 1883, c. 409, § 1, entitled "An act to provide for a new aqueduct, etc., for New York City," authorizes the mayor, comptroller, and commissioner of public works of the city, and three persons named, to carry out the provisions of the act, and designates them as "Aqueduct Commissioners."   Section 25 provides that the commissioners of public works shall prepare forms of contracts and specifications for doing the work and furnishing the materials, such forms to be approved by the aqueduct commissioners and by the corporation counsel.   Section 30 provides that the contracts, when awarded, shall be executed by the contractors on the one part, "and the said aqueduct commissioners, acting for the city of New York, on the other part," and that the city shall in no event be subject to any greater liability than is expressed in such contracts, nor required to pay out any sum of money "greater than is stipulated in such contract, nor otherwise than in strict conformity to the terms thereof."   The act also authorized the aqueduct commissioners to appoint their own agents and employes, and imposed on them the duty of superintending and constructing the aqueduct.   Held, that the aqueduct commissioners were a board appointed by the state, who had no authority to bind the city, as its agents, further than was expressly provided by the terms of the act; and where the commissioners awarded to plaintiffs a contract for the construction of a portion of the aqueduct, under which contract payment for the work done was to be made by the city on the certificate of the engineer in charge of the work as to the amount of the work done by plaintiffs, and the value thereof, no recovery can be had for any work done, except on such certificate, unless the

engineer failed to give the certificate within a reasonable time after demand made therefor, or in bad faith gave a false certificate or made a palpable mistake therein.

**2. SAME—CONTRACT FOR CONSTRUCTION—COMPENSATION.**

The contract awarded to plaintiffs under the act of 1883 provided that the form and area of the cross-section of the tunnel excavation at any place shall be such as the engineer may determine for that place, and that the tunnel at any place is to be excavated to the line of the cross-section determined by the engineer for that place. It further provided that any excavation beyond such line should be filled up by plaintiffs at their own expense, and that "no payment will be made for any excavation outside of the cross-section of the tunnel excavation determined by the engineer, but all loose or shaky rock must be removed." *Held,* that plaintiffs were not entitled to any pay for excavations beyond the line established by the engineer; the fact that by the method of excavation adopted some of the rock outside the line would necessarily be removed having been contemplated by the parties when the contract was made.

**3. SAME—FINAL CERTIFICATE OF ENGINEER—PRIOR PARTIAL ESTIMATES.**

The contract provided that each month, as the work progressed, the city should pay plaintiffs 90 per cent. of its value as estimated by the engineer, and that on the completion of the work the engineer should so certify to the aqueduct commissioners, and in his certificate should state from actual measurements the whole amount of the work done by plaintiffs, and its value under the terms of the contract, and that within 30 days after the acceptance of the work by the commissioners the city should pay plaintiffs the amount remaining, after deducting from the value stated in the last-mentioned certificate all such sums as by the terms of the contract the city should be entitled to reserve; also that the final certificate of the engineer should be conclusive, all prior partial payments being made merely on estimates subject to correction by the final certificate. *Held,* that the engineer, on making his final certificate, properly determined the entire amount of excavation for which plaintiffs were entitled to be paid, and none of the prior partial estimates were conclusive.

**4. SAME—NEGLIGENCE OF COMMISSIONERS OR EMPLOYES.**

In such case no recovery can be had against the city on account of misconduct or mistakes of the engineer in charge of the work, or for damages sustained by reason of orders given him by the commissioners or by the engineer, since by the terms of the act of 1883 the liability of the city is expressly limited to the amount required by the contract to be paid, and neither the commissioners nor their employes are the servants of the city so as to render applicable the doctrine of *respondeat superior.*

Action by John O'Brien and others against the mayor, etc., of the city of New York, for moneys alleged to be due under a contract for constructing a portion of the new aqueduct.

*E. T. Lovatt,* (*Joseph H. Choate, L. Laflin Kellogg,* and *Treadwell Cleveland,* of counsel,) for plaintiffs.   *William H. Clark,* (*Elihu Root, Austen G. Fox,* and *Wallace Macfarlane,* of counsel,) for defendants.

INGRAHAM, J.   The different causes of action set up in the complaint may be divided into two general classes: *First,* those based upon the obligation of the defendants under the contract made by the aqueduct commissioners, in the name of the defendants, under the authority conferred upon them by chapter 409 of the Laws of 1883, to build section 6 of the aqueduct, whereby plaintiffs seek to recover the amount due to them for work performed, and for which they are to be paid by the terms of the contract; and, *second,* those in which the city is sought to be held liable for the acts or failure to act of the chief engineer or his subordinates, where the contract contains no provision requiring the defendants to pay for the damages caused or expenses incurred thereby.   In order to recover for the amount due under the contract, the obligation is upon the plaintiffs to show that they have substantially performed the contract upon their part.   So far as the causes of action which seek to hold defendants liable for the acts of the engineers appointed by the aqueduct commission, such causes of action must depend upon some relation that exists between the defendants and such engineers, or some liability upon the part of the city for the act of the person whose negligence caused the injury.   The contract in question was prepared and submitted to

the plaintiffs before they made their bids to build this section. In form the contract is between the mayor, aldermen, etc., acting by and through the aqueduct commissioners, by virtue of the powers vested in them by chapter 290 of the Laws of 1883, parties of the first part, and the plaintiffs, parties of the second part. The only authority that the aqueduct commissioners had to act on behalf of these defendants, the city of New York, was that conferred upon them by the statute under which they acted. They were not the general agents of the city. Their authority was strictly limited by the provisions of the statute, and they could create no obligation which was binding upon the city of New York except in accordance with the express provisions of the statute. That persons contracting with municipal corporations are chargeable with knowledge of the limitation of the powers of those assuming to act on behalf of such corporations is a principle that has been settled and applied many times in litigations against the city of New York. Thus in *McDonald* v. *Mayor, etc.*, 68 N. Y. 27, FOLGER, J., says: "It is fundamental that those seeking to deal with municipal corporations, through its officials, must take great care to learn the nature and extent of their power and authority." And it was there held that a contract made by the officers of a municipal corporation, without complying with the provisions of· the charter requiring the making of such contracts, is absolutely void, and imposes no liability upon the corporation, although the contract had been actually performed. And it was also expressly decided that although the corporation appropriated the materials of the plaintiffs, and used them, the corporation was not bound to pay for such property upon an implied liability. And in *Smith* v. *City of Newburgh*, 77 N. Y. 136, the same principle was applied, MILLER, J., saying: "The absolute excess of authority by the officers of the corporation in violation of law cannot be upheld, and where the officers of such a body fail to pursue the strict requirements of a statutory enactment under which they are acting, the corporation is not bound. In such case the statute must be strictly followed, and a person who deals with a municipal body is bound to see that its charter has been fully complied with. When this is not done, no subsequent act can make the contract effectual." Whatever authority, therefore, the aqueduct commissioners or their engineers had to bind the defendants it acquired under the act of 1883, and the city is not liable for any act of the commission or its officers except when such act is within the power and authority conferred upon them by this statute.

Chapter 409 of the Laws of 1883 is entitled "An act to provide for new reservoirs, dams, and a new aqueduct, with the appurtenances thereto, for the purpose of supplying the city of New York with an increased supply of pure and wholesome water." By the first section the mayor, the comptroller, and the commissioner of public works of the city of New York, and three persons named, are authorized, empowered, and directed to carry out the provisions of the act in the manner thereinafter provided, "for the purpose of supplying said city with an increased supply of pure and wholesome water, and they are there designated 'Aqueduct Commissioners.'" The act then provides for the preparation of plans, maps, specifications, estimates, and particulars relating thereto, for the construction of the new aqueduct, and for the construction of one or more dams and reservoirs to retain such water, and it authorizes proceedings to condemn such land as shall be necessary to build the aqueduct. Section 25 provides for the preparation of forms of contracts and specifications for the doing of the work and furnishing of materials required to be done and furnished by the plans. The commissioner of public works is to prepare and submit to the aqueduct commissioners and to the counsel for the corporation the forms of contract and specifications. Such forms of contracts are to be either approved or rejected by the aqueduct commissioners, and must be approved as to form by the counsel to the cor-

poration. In case of the rejection of the forms of contracts and specifications, the commissioner of public works is to prepare other forms in the place thereof until the contracts covering the entire work and materials required by the approved plan or plans shall have been approved by the aqueduct commissioners and the counsel to the corporation. The aqueduct commissioners are given the exclusive authority to determine what provisions shall be embodied in said contracts, in order, so far as may be possible, to save the city from loss, embarrassment, and litigation by reason of any work done or supplies furnished thereunder, and when the forms of contracts are finally approved, as provided for in section 25, the aqueduct commissioners are then authorized to advertise for bids for the doing of the work and for furnishing the materials called for in such approved form of contracts, and are to accept such bids as will, in their judgment, best secure the efficient performance of the work, and to award to the successful bidders the contract for doing the work. Section 30 then provides that the contract, when so awarded, shall be executed in triplicate by the contractor or contractors on the one part, "and the said aqueduct commissioners, acting for the city of New York, on the other part," and it is provided that the work and materials called for by said contract shall be done under the direction and supervision and subject to the inspection of the said aqueduct commissioners, their engineers, supervisors, and inspectors. The legislature has thus constituted an entirely independent board, and intrusted it with the prosecution of this work. The board is appointed by the state. It provides its own offices, and it appoints its own agents and employes, and upon this board so constituted is imposed the duty of superintending and constructing the aqueduct. The city of New York is given no voice in the manner in which the work shall be done, in the supervision of the contracts, in the management of the details of the work; and the only power that the aqueduct commissioners have to bind the city is in the making of the contract which they are authorized to make on behalf of the city. The statute thus expressly limited their power to create any liability binding upon the defendants, so that the city shall not be liable except for the amount of money directed to be paid by the contracts made by such officers in behalf of the city; and, to prevent any possible doubt as to the intention of the legislature in limiting the liability of the city, as before stated, section 30 contains the following provision: "But in no event shall the city of New York be held liable in any action or proceeding brought or had under any contract so made to any other or greater liability than that expressed therein, nor required to pay out or otherwise dispose of any sum of money for the doing of such work or the furnishing of such material greater than is stipulated in such contract, nor otherwise than in strict conformity to the terms thereof." Acting under this authority, and in accordance with the provisions of the statute, the aqueduct commissioners, on behalf of the city, made a contract by which the plaintiffs undertook to build section 6 of the aqueduct, and a careful examination of the contract as made will show that in it there is but one obligation imposed upon the city,—one thing that the commissioners, acting for the defendants, agreed that the defendants would do,—and this obligation, binding upon the city, is that, upon the estimates of the engineer as to the work done each month, the city would pay to the plaintiffs 90 per cent. of its estimated value, and that whenever, in the opinion of the engineer, the plaintiffs should have completely performed their contract on their part, and the said engineer should so certify in writing to the aqueduct commissioners, and in his certificate should state, from actual measurements, the whole amount of the work done by the plaintiffs, and also the value of such work under and according to the terms of the contract, and on the expiration of 30 days after the acceptance by said commissioners of the work therein agreed to be done by the plaintiffs, the defendants would pay to the plaintiffs in cash the amount remaining, after deducting

from the amount or value contained or stated in the last-mentioned certificate, all such sum or sums of money as, by the terms thereof, they are or may be authorized to reserve or retain. The contract was to be carried out under the supervision of the aqueduct commissioners, but their acts in supervising such contracts were not as agents of the city nor under authority conferred upon them by a corporate act, but under the power given to them by the statute, and in conformity with its provisions. There is certainly no express provision of the statute making the defendants liable for the acts of the aqueduct commissioners or their employes, nor is there any relation between such officers and the defendants, created by the statute, as would make the rule of *respondeat superior* apply. The commissioners had the power to make a contract, acting for the city of New York, and the defendants were bound to fulfill the obligations created by that contract, and that obligation was to pay the amount certified by the engineer.

It has been settled by repeated adjudications that where the amount due to the contractor is to be determined by the certificate of an engineer or other third party, the production of a certificate is a condition precedent to a right to receive the amount to be paid to the contractor under the contract, or it must appear that the person designated has neglected or refused to give a certificate within a reasonable time after the contract has been completed and an application has been made therefor; that when a certificate is given it is conclusive upon the parties, and, in the absence of proof of corruption, bad faith, or misconduct on the part of the person designated, or palpable mistake appearing on the face of the certificate, neither party can be allowed to prove that such designated person decided wrongly as to the law or facts. *Bryon* v. *Low,* 109 N. Y. 291, 16 N. E. Rep. 45; *Sweet* v. *Morrison,* 116 N. Y. 32, 22 N. E. Rep. 276; *Phelan* v. *Mayor, etc.,* 119 N. Y. 86, 23 N. E. Rep. 175; *Delaware & H. Canal Co.* v. *Pennsylvania Coal Co.,* 50 N. Y. 266, and cases cited.

The cause of action to recover for money to be paid under the contract can be sustained only upon showing that after the completion of the contract plaintiffs had demanded of the engineer, who, under the contract was to make the final certificate, that he make such a certificate, and that he had refused or unreasonably neglected to comply with that demand, or that fraudulently, corruptly, or in bad faith he made a false certificate, so that the court would be justified in setting aside the certificate as not binding upon the plaintiffs. By the contract sued on the engineer was required to certify to the aqueduct commissioners that the plaintiffs had completely performed the contract, and in his certificate was to state from actual measurement the whole amount of the work done by the plaintiffs, and the value of such work under and in accordance with the terms of the contract. The engineer was not to certify to the plaintiffs, but to the aqueduct commissioners, and, if he so certified to them before the commencement of this action, it is clear that the amount to which the plaintiffs were entitled was the amount which, by such certificate, should appear to be due over and above the payments theretofore made to the plaintiffs; and as it appears that the chief engineer, acting under this provision of the contract, did, on the 18th of June, 1889, certify to the commissioners the amount due to the plaintiffs under the contract in this case, that certificate is binding upon plaintiffs unless they show fraud, corruption, or bad faith. Assuming that there is evidence to sustain a finding by the jury that prior to the 18th day of June, 1890, there had been an unreasonable delay in making the certificate, such delay would not nullify a certificate actually made before an action was commenced to recover for the work done under the contract, nor entitle the contractor to proceed as though no certificate had actually been made. It is only where a party to a contract is entitled, because of his substantial performance of the contract, to receive the stipulated compensation for such performance, and commences his action to recover such

compensation, and justifies his failure to produce a certificate required by the contract to be produced as a condition precedent to his recovery, by the refusal or neglect of the person designated to make the certificate required by the contract to be made, that evidence of such refusal or neglect is material. Where it appears that prior to the commencement of the action a certificate required by the contract had been actually made by the person designated therein to make such a certificate, the time at which such a certificate was made is immaterial, and such a certificate becomes binding upon the parties unless proved to be made fraudulently or in bad faith. By the contract in question the right of the plaintiffs to receive the final payment depended upon the making of the certificate by the engineer that the plaintiffs had completely performed the contract on their part, and his certificate was to state, from actual measurements, the whole amount of work done by the plaintiffs, and the value of such work, according to the terms of the contract, and the defendants were to pay in cash the amount remaining after deducting from the amount or value contained or stated in the last-mentioned certificates such sums as should theretofore have been paid to the plaintiffs under the provisions of the contract.

The engineer did, by his certificate of June 18th, certify to the whole amount of work done by the plaintiffs, and although the provision as to the completion of the work was not in the exact form provided for by the contract, it was accepted by the commissioners as a substantial compliance therewith, and they subsequently accepted the work as substantially completed according to the terms of the contract. I do not think that the plaintiffs can complain as to the form of the certificate, it having been accepted by the aqueduct commissioners and the defendants as a certificate required by the contract, and I think this certificate, as made, is binding upon the plaintiffs, unless it appears that there was fraud, corruption, or bad faith upon the part of the engineer, and the question is now presented as to whether there is any evidence that would justify the submission of the question of the good faith of the engineer to the jury. There can be no doubt but that a plain and gross error in the award of such a character that would justify an inference that the engineer intended to allow to the contractor less than he was clearly entitled to would be some evidence of such fraud or bad faith, but the error must be very plain and palpable. *Perkins* v. *Giles*, 50 N. Y. 232. The principal objection that plaintiffs have made to this certificate is as to the amount of rock excavation allowed plaintiffs, and that question depends upon whether or not the engineer should have allowed for the excavation outside of the space occupied by the brick masonry that forms the lining of the tunnel. To justify the submission of this question to the jury it is not enough to show that the engineer has made an honest mistake in the construction that he has given to the contract where a doubtful question was presented to him for his determination; for, by the contract, where such a question arose the parties agreed that the decision of the engineer should be controlling, and, having given to this contract careful consideration, I am satisfied that the construction given to the contract by the engineer was not only a reasonable construction, but was, under the circumstances, the true construction of the contract. By clause 17 of the specifications, made a part of this contract, it is provided that the form and area of the cross-section of the tunnel excavation at any place shall be such as the engineer may determine for that place, and by clause 21 it is provided that the tunnel at any place is to be excavated to the line of the cross-section determined by the engineer for that place. These two provisions, taken together, indicate the plain intention that the engineer was to determine for each particular portion of the tunnel the extent of the excavation that the proper construction of the aqueduct required. As the work progressed the engineer was to determine how much of an excavation was required for the construction of the aqueduct at each particular place, and the area depended upon the nature of the substance in which the aqueduct was to be built, and when, at any par-

ticular point, the engineer indicated the line to which the excavation was required, within that line was the form and area of the cross-section of the tunnel at that place; and when such a cross-section was established the contractor was bound to excavate up to that line. If the contractor did any excavation beyond that line he was, by section 20 of the contract, to fill up the space between the top of the arch and the rock and other material that remained at his own expense. He was, however, to be paid only for the excavation within the line so given him by the engineer, as section 21 provides that "no payment will be made for any excavation outside of the cross-section of the tunnel excavation determined by the engineer, but all loose or shaky rock must be removed." The contractor was thus required to remove all rock that had been loosened or shaken by the use of powder or other explosive used in excavating the tunnel up to the lines given to him, and it was thus contemplated that the excavations would necessarily extend beyond the lines of the necessary excavations for the structure. The contractor was not, however, bound to excavate beyond that line. If he did, he was not to be paid for it, but was expressly required to fill such extra excavation up. It seems to me that under this contract the plaintiffs were not entitled to be allowed for any excavation beyond the lines established by the engineer as the lines to which the tunnel must, under the contract, be excavated.

The evidence shows that the only line given by the engineer to the contractors as the work progressed through the rock excavation was the line that included the outside of the brick lining of the aqueduct, and the evidence is that when that line was designated the contractor was informed that he was to excavate up to that line; that his drill-holes would be placed within that line; and that there must be no rock within the area thus designated. And it seems to me clear that under the provisions of the contract the line thus given to the plaintiffs by the engineer was the line provided by section 21 of the specifications as the line to which the contractor was bound to excavate, and for the excavation inside of that line he was to be paid. The fact that by the method adopted by him for excavating he necessarily removed some of the rock outside of the line so given to him was contemplated by the parties at the time the contract was made, and provision was made by the clause before quoted that for any excavation outside this cross-section, as determined by the engineer, the contractor was not to be paid. That provision would be without meaning if the cross-section mentioned was to be not only the space within the line given to which the contractor was required to excavate, but was also to include the space beyond such lines, which the ordinary methods adopted for such work would actually excavate. When the engineer was required to give his final certificate, this question as to the amount of excavation for which the plaintiffs were entitled to be paid was presented to him for his determination. Under the contract, by clause 5, it was expressly provided that the action of the engineer, by which the plaintiffs were bound and concluded, according to the terms of the contract, should be that evidenced by his final certificate, all prior partial payments being made merely upon estimates subject to correction of such final certificate. It was therefore at the time of making the final certificate that these questions had to be met and finally determined, and the prior decision of the engineer as to the amount of the excavation for which the plaintiffs were entitled to be paid was subject to correction at this time. There was nothing in any of the decisions of the engineer prior to the time of making the final certificate that could possibly be binding upon the city, or conclude the engineer from adopting, at the time he made the final certificate, a construction of the contract that at that time seemed to him to be a proper one. The letter of February 7, 1887, was in form of a report to the aqueduct commissioners, and simply indicates an opinion as to the proper construction of the contract, and while it might be adopted as an expression of the engineer's views at that time, it could be nothing more

than that, and could not estop him or the person who should be chief engineer at the time the final certificate was to be made; and, as I understand it, it does not purport to relate to the final certificate, but merely to the provisional estimates which, by the clause of the contract before cited, were to be subject to the correction of the final certificate. Nor could the aqueduct commissioners, nor any of its employes, by any construction of the contract made by them, so change the contract that additional liability was imposed upon the city. Under the act the aqueduct commissioners had power to make a contract on behalf of the city only when the terms of the contract had been settled as prescribed in the statute, and they were given no power to bind the city by any resolution to pay any greater sum than the contract expressly provided that the city should pay; and I do not think that the action of the engineer and aqueduct commissioners, in February, 1887, and subsequent thereto, could have the effect of increasing in any way the liability of the defendants under the contract, or binding the engineer by his final certificate to allow to the contractors any greater sum for rock excavation than they would be entitled to under the express provisions of the contract itself.

There are other claims by the plaintiffs that were not included in the final certificate, but in each case the question as to whether or not the contractor was entitled to be paid for the work was to be determined by the engineer in his final certificate, and I think there was in all cases a doubtful question for him to decide, and that there is no evidence to justify a finding that his decision was improperly influenced. I can see no evidence, therefore, that would justify a finding of corruption, bad faith, or misconduct on the part of the engineer, and the plaintiffs are therefore concluded by the engineer's certificate, and are entitled to receive only the amount certified to by him as due. As to all claims against the city arising out of the misconduct or mistakes or errors of the engineer in charge of the work, or on account of or by reason of damage sustained because of orders given to them by the commissioners or the engineer, there can be no recovery, because, by the express provisions of the act, the liability of the city of New York is limited to the amount required to be paid by the contract. To impose any other liability upon the city would be an express repeal of the statute under which the contract was made.

As I have before stated, the limitations contained in the statute under which this contract was made and the work done bound the persons who made the contract for the doing of the work. The first section of that act designates the individuals who are to carry out its provisions, and the commissioners thus appointed are given the appointment of the necessary clerks, messengers, or employes, and it is the aqueduct commissioners, their engineers, supervisors, and inspectors who were to direct, supervise, and inspect the carrying out of the performance of the contract. It seems to me clear that neither the aqueduct commissioners, nor the engineers or inspectors, were servants of the defendant so that the defendant was liable for their negligence. In the case of *Maximilian* v. *Mayor, etc.*, 62 N. Y. 163, the responsibility of a municipal corporation for the negligence of public officers is discussed, and it seems to me that the liability of the defendant for the acts of these officers is determined by the principle established in that case. FOLGER, J., in delivering the opinion of the court, says: "This rule of *respondeat superior* is based upon the right which the employer has to select his servants, to discharge them, if not competent or skillful or well behaved, and to direct and control them while in his employ. The rule has no application to a case in which this power does not exist. * * * The difficulty is not here. It is in determining, in a particular case, whether the negligent employe is the servant of the municipality, for it is not every one who has in charge personal property owned by a municipality, and sets about some lawful act with it within the municipal bounds, that is its servant, nor even if his appointment comes intermediately or immediately from the municipality itself. If the act

of the officer or the subordinate of an officer thus appointed is done in the attempted performance of a duty laid by the law upon him, and not upon the municipality, then the municipality is not liable for his negligence therein." And in *Terhune* v. *Mayor, etc.*, 88 N. Y. 250, the same principle was reaffirmed, the court saying: "But the plaintiff claims that his action may be treated as one to recover of the city damages for his dismissal from office. It is a sufficient answer to this claim that the city did not dismiss him from his office. The fire commissioners were public officers, and not agents of the city." In *Tone* v. *Mayor, etc.*, 70 N. Y. 165, it was held that the city was not responsible for the acts of the board of revision and correction; that in the discharge of their duties the members of that board acted as independent public officers, engaged in a public service. They were not selected by the corporation, and it could not control their acts. Their powers were defined by the legislature, and were not what might be properly called "corporate powers;" that, even if they may be properly called "city officers," they are charged with a public service, and for any negligence or omission therefor in the discharge of their duties no action will lie against the city, and the maxim of *respondeat superior* has no application. And in *Ham* v. *Mayor, etc.*, Id. 462, it was held that the application of the doctrine of *respondeat superior* depended upon the question whether the power to discharge, direct, and control existed; that to render the corporation liable for the acts of officers or agents they must necessarily have been its agents or servants, selected or appointed, and liable to be removed by a representative of the corporation for the manner in which they should discharge the trust reposed in them. Applying this principle to the case at bar, it would seem clear that neither the aqueduct commissioners, nor their employes or servants, sustained such a relation to the city as would make the city liable for their acts of negligence. The case of *Mulholland* v. *Mayor, etc.*, (N. Y.) 20 N. E. Rep. 856, does not apply, for there it was the city's engineer who required that the additional work was to be done, and it was for that act of the agent of the city that the city was held liable.

I have thus come to the conclusion that upon neither of the causes of action alleged in the complaint can the plaintiffs recover more than the amount remaining due according to the certificate of the engineer, for the amount to be paid under the contract, and the amount certified to by the engineer, and that amount only, is due. As to all other claims whereby the city is sought to be held for acts or directions of the aqueduct commissioners, or defendants' agents or servants, the city is not responsible. The motion of the defendants that a verdict be directed for the plaintiffs for the amount remaining unpaid, according to the certificate of the engineer, is therefore granted.