THE SEWER COMMISSIONERS OF AMSTERDAM, Appellant, _v._ TIMOTHY SULLIVAN and Others, Respondents.

_Threats of a contractor to abandon work — when they do not justify his removal therefrom — effect of an engineer's estimate._

A contractor, under a contract which provided that a municipal corporation, the party of the first part thereto, might complete the contract in case the contractor "shall fail in due performance in any part of his undertaking, or shall become bankrupt or insolvent," being dissatisfied with the engineer's estimate made of his work done, told the contracting board that he would not go on with the work unless the estimate was allowed at his figures, and that he was unable to pay his men unless he received the amount claimed by him. After the contractor had gone, the contracting board passed a resolution directing the engineer to take possession of the work, which the engineer did the next morning, although the contractor, who was not informed of the action of the contracting board, was there present prepared to proceed with the work.

_Held_, that as the contracting board subsequently justified the action of the engineer in taking charge of the work, his knowledge as to the situation at the time when he took possession was attributable to the contracting board;

That a mere threat to abandon the work, not followed by an actual abandonment, did not justify the expulsion of the contractor therefrom, nor a forfeiture of his rights therein, as no injury or change of situation was shown to have occurred by reason of such threat;

That the contracting board, not having claimed that its action was based upon the contractor's insolvency, was not in a position on the trial of an action to rest its defense upon the statement of the contractor that he was unable to pay his men unless he received the amount claimed by him.

The estimate of an engineer, under a contract which provides that it shall be final and conclusive, will not be disturbed unless there is proof of corruption, or bad faith, or misconduct on the part of the engineer, or unless a palpable mistake appears on the face of the estimate itself.

APPEAL by the plaintiff, The Sewer Commissioners of Amsterdam, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Montgomery on the 14th day of September, 1895, upon the report of a referee.

*W. Barlow Dunlap*, for the appellant.

*M. E. Driscoll*, for the respondents.

MERWIN, J. :

In November, 1888, Sullivan & Co., a firm of which the defendant Sullivan is the survivor, entered into a contract with the plaintiff for the construction of a sewer in the city of Amsterdam. The work was commenced by Sullivan & Co. and continued by them until April 5, 1889, when the plaintiff took possession and completed the work at a loss to the city, as the plaintiff claims, of about $1,300 over and above the contract price. This loss the plaintiff in this action seeks to recover of Sullivan and the sureties on a bond given by the contractors for the faithful performance of the contract.

The plaintiff claimed the right to enter and complete the contract under one of its provisions, being section 23, by which it was provided that it might do so " in case the party of the second part (Sullivan & Co.) shall fail in due performance in any part of his undertaking or shall become bankrupt or insolvent." In the complaint it is alleged that the contractors failed to perform the contract.

It was found by the referee that the contractors were not in default, had not in any respect violated their contract, and that the

plaintiff had no right to take possession. By way of counterclaim the referee allowed to the contractors the sum of $470.32 for the amount unpaid on the estimates of work done in January and February, 1889, as certified by the plaintiff's engineer; also, the sum of $60 for extra work performed in February, which had not been paid, making the sum of $530.32, which the referee found was due the contractors for work performed by them under the contract. The referee also found that on the 5th of April, 1889, when the plaintiff took possession, Sullivan & Co. had in use upon the work tools, implements and machines which were useful and being used in the construction of the sewer, and that the plaintiff, by its agents and servants, took possession of and received the same from Sullivan & Co., and used and consumed the same in and about the work, and that they were not returned to Sullivan & Co., whereby the plaintiff became indebted to Sullivan & Co. for the value thereof with interest from April 5, 1889. The value is found to have been $283.77 at the time they were so taken and received. Judgment was ordered by the referee in favor of Sullivan as surviving partner for the sum of $530.32, with interest from January 1, 1890, and $282.77, with interest from April 5, 1889, and as to the other defendants the complaint was dismissed.

The plaintiff claims that the referee erred (1) in holding that the plaintiff had no right to take possession; (2) in allowing sixty dollars for extra work; (3) in charging the plaintiff with the value of the tools, implements and machines; (4) in admitting certain evidence as to the solvency of the contractors.

1. The plaintiff took possession on the morning of April fifth. Up to this time there had been no failure on the part of the contractors to perform their contract. The work was going on as directed by the plaintiff's engineer. The men of the contractors were at work on the fourth of April, and they were on hand ready to start at seven o'clock on the morning of the fifth when the engineer of the plaintiff, by its direction, assumed control and excluded the contractors from any further control or possession. There is evidence tending to show that the contractors had not become bankrupt or insolvent. The plaintiff, however, seeks to justify its action by reason of what occurred the evening before between Sullivan and the commissioners.

Sullivan was in charge of the work, his partner and the sureties. living at Syracuse. The engineer had a day or two before made his estimate of the work done in March at about the sum of $300. Sullivan was dissatisfied with this estimate. He claimed he had done work to the extent of $1,000, a large portion of which was. outside of the contract on a line not called for in the contract, and which should be considered extra work. The engineer declined to consider it in this light, and a special meeting of the commissioners. to consider the subject was held on the evening of April fourteenth. At this meeting Sullivan was present and said, in substance, that he ought to be allowed $1,000 on the March work; that he was unable to pay his men unless he got $1,000, and that unless he got it he. would refuse to proceed with the work. Sullivan testifies that as he was leaving the meeting he informed the engineer that, whatever action the commissioners took that night, he was not going to abandon the work and give up the job until he obtained legal advice and consulted with his partner and bondsmen, and that he would be on hand in the morning. After he left, the commissioners passed a resolution directing the engineer to take possession the next morning. Before passing this, they consulted with the engineer, and he testified on his first examination that, according to his best recollection, he then informed the commissioners of the intention of Sullivan to go on on the following morning. The engineer afterwards denied that he had so informed them. Sullivan was not informed of the action of the commissioners until the engineer was in the act of taking possession the following morning. Sullivan then claimed the right to go on, but the engineer excluded him. The engineer, however,. employed the same foreman and men that Sullivan had there. On the fifth of April the commissioners sent to the sureties a notice that in consequence of the refusal of the contractors to perform the work, they are compelled to finish the same as provided in section 23 of the contract and should look to the bondsmen for the damages. On the eighth of April, which was Monday, Sullivan & Co. served a written notice on the plaintiff that they had not abandoned the work, and demanded that the engineer be instructed to allow them to proceed, which they were ready to do according to the terms. of the contract. This request was not complied with. On the: eleventh of April the sureties served a written notice on the plain-

tiff demanding a reinstatement of the contractors, and if that was not done, then demanding the right to proceed with the work themselves. This was refused.

The plaintiff invokes the doctrine of equitable estoppel. (*Shapley v. Abbott*, 42 N. Y. 447.) The claim is that when Sullivan said he would quit if the board would not allow his claim for extra work, the board, if it concluded not to allow the claim, could, without giving Sullivan any notice of its action on his claim, go on and take possession although Sullivan at the time was in fact going on with the work and had not abandoned it. There was some evidence that the board knew of his intention to go on until he could hear from his partner and bondsmen. The engineer, as he took possession and before he did anything or the board did anything to change its position, knew that there was in fact no abandonment. The knowledge of the engineer, as to the situation in fact, when he took possession, should be attributed to the board. It justified its engineer's action after it knew the situation. A threat to abandon, not being followed by an actual abandonment, would hardly justify an expulsion or forfeiture. The board had a right to have its work performed according to the contract. As long as that was being done the board had no right to complain. No such injury or change of situation was shown to have occurred by reason of what Sullivan said, as would equitably justify the board in excluding him from the work. They knew there was no abandonment before they acted to their injury.

But it is suggested that Sullivan said he had no means to pay his men, and that, therefore, the board had a right to consider the contractors insolvent and thereupon take possession. There is no allegation of this kind in the complaint, and, therefore, it should be assumed that this was not the ground on which possession was taken. There was proof that the contractors were solvent.

The finding in effect by the referee, that there was no equitable estoppel in the case, should not, I think, be disturbed.

2. The $60 was allowed for balance of extra work performed in February. The contractors presented to the engineer a bill for extra work that month to the amount of $202. Of this the engineer allowed the sum of $142 and included it in the estimate for that month. Sullivan testifies that the engineer told him that

he would allow the balance when a quantity of frozen earth was removed from the bank of the canal. It is not shown that this was ever done by the contractors although there was plenty of time for the doing of it before they left. Besides the item is allowed by the referee as for extra work done under the contract. By the contract the estimate of the engineer is final and conclusive and a case is not made for going back of the estimates within the rule laid down in *Sweet* v. *Morrison* (116 N. Y. 19, 34). Corruption, bad faith or misconduct on the part of the engineer or palpable mistake appearing on the face of the estimate is not shown.

The item of sixty dollars was, I think, improperly allowed.

3. The plaintiff claims that the finding of the referee as to the tools, implements and machines is contrary to the evidence. We think not. The evidence was sufficient to justify the finding and should not be disturbed.

4. The rulings as to the evidence in regard to the solvency of the contractors do not present any good ground for reversal of the judgment.

It follows that, except as to the sixty dollars above referred to, the judgment should be affirmed.

All concurred.

Judgment modified by deducting therefrom the sum of sixty dollars and interest thereon from January 1, 1890, and as modified affirmed, with costs.