SMITH et al. v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 11, 1896.)

CONTRACTS—ACTIONS ON—EFFECT OF ENGINEERS CERTIFICATE.

Where a contract with a city provides that a certificate of the city engineer shall be final and conclusive as to the amount of work done or materials furnished, it is error, in an action for the contract price, to submit that question to the jury, unless bad faith or palpable mistake on the part of the engineer is shown.

Appeal from trial term, New York county.

Action by James S. Smith and De Witt C. Hanfield against the mayor, aldermen, and commonalty of the city of New York, for work done and materials furnished under a contract. From a judgment entered on a verdict in favor of plaintiffs, and from an order denying a motion for a new trial, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and INGRAHAM, JJ.

Theodore Connoly, for appellants.
L. Laflin Kellogg, for respondents.

PATTERSON, J. There are two causes of action set forth in the complaint herein. On the trial the jury found in favor of the plaintiffs on the issues joined on the first cause of action only. From the judgment entered on the verdict, and from an order denying a motion for a new trial, the defendants appeal.

The controversy relates to a contract made between one Cox, the plaintiffs' assignor, and the defendants, for regulating, grading, draining, and improving the easterly portion of the grounds included in Van Cortlandt Park. The contract was awarded to Cox, on a bid made by him, but the work was done by the plaintiffs, and to the full satisfaction of the commissioners of the department of public parks, expressed and certified by their engineer, as required by the contract. The whole work contracted for consisted of various items of excavation, of sewer building, of masonry, and of filling in and top soil, all the materials for which were furnished by the plaintiffs. On the trial the contest was narrowed down to the one item of the amount of material supplied for filling and top soil, and placing the same in embankment, which by the contract was to be paid for at 46 cents per cubic yard. The plaintiffs claim that they furnished and put in place 155,819 cubic yards, according to measurements asserted by them to have been made correctly and in accordance with the terms of the contract; while the engineer of the park commissioners insisted and certified that the measurements, as he finally ascertained and fixed them, showed that only 138,737 cubic yards had been furnished by the plaintiffs.

The section of the contract under which the dispute arises is as follows:

"The filling or embankment below the top soil to be placed thereon will be measured and computed from the levels taken upon the present surface of the grounds to be filled, and no allowance for settlement or shrinkage will be allowed or paid for."

There was no way of ascertaining by count or tally the exact amount of filling furnished by the plaintiffs, and the section of the contract thus quoted establishes the only method by which a computation of it can be made. It was thoroughly understood that the measurements were to be approximate. It was further provided in the contract that the return of the engineer appointed by the commissioners of the department of public parks in charge of the work should be the account by which the materials furnished and work done should be computed, and also that the contractor should not be entitled to demand or receive payment for any portion of the work or materials until the same should be completed in the manner set forth in the contract, and such completion be duly certified by the engineer in charge of the work, and until each and every stipulation of the contract had been performed to the satisfaction of the commissioners of the department of public parks, and accepted by them; and, also, that the contractor should not be entitled to demand or receive payment for any portion of the work or materials until the engineer should have certified that the work had been done and the materials furnished in accordance with the terms of the agreement; and it was further stipulated that the action of the engineer, by which the contractor was to be bound and concluded, according to the terms of the contract, should be evidenced by a final certificate, which final certificate might be made without notice to the contractor of it, or of the measurements upon which the same was based. The contract was entered into after proposals for the work were published, and biddings made. Plans and specifications were prepared of the work to be bid for, which plans and specifications were examined by Mr. Cox before he put in his bid, and that bid was made and accepted with full knowledge of certain conditions of which particular notice was given, and among them the following:

"Bidders must satisfy themselves by personal examination of the location of the proposed work, and by such other means as they may prefer as to the accuracy of the foregoing engineer's estimate, and shall not, at any time after the submission of an estimate, dispute or complain of such statement or estimate, nor assert that there was any misunderstanding in regard to the depth or character of the excavation to be made, or the nature or amount of the work to be done."

And also that:

"Bidders will be required to complete the entire work to the satisfaction of the commissioners of the department of public parks, and in substantial accordance with the specifications and plans proposed."

The plans and specifications referred to are the same plans and specifications mentioned in the contract, and the contractor stipulated in the contract that he would in every respect strictly conform to those specifications and plans, and that he would not at any time assert that there was any misunderstanding in regard to the nature of the work, "or the nature or amount of materials to be furnished, and that it would all be done in substantial accordance with the specifications and plans therein mentioned." Upon one of the plans (defendant's Exhibit No. 2) there is a series of cross-sections drawn, showing the top and bottom lines of filling, and it is upon

these lines that the engineer ascertained and certified the amount of filling that had been done. The surface of the ground referred to in the clause of the contract first above quoted is represented by the bottom line, being that level upon which the material filled in would find a solid support, and would rest. As the proof developed the case, the only question appeared to be the accuracy of that bottom line, and the correctness of the engineer of the park department in establishing that bottom line. The engineer of the park department testifies as to the method by which he made examination of the ground to ascertain where this bottom line, indicating the surface of the ground to be filled, should be drawn. Testimony on behalf of the plaintiffs was introduced of an engineer, who stated that not only was the method resorted to by the city to ascertain the true level erroneous, but that it employed different and proper means for ascertaining it, from which it was shown that the real surface of the ground to be filled was lower than that fixed by the department, and that, consequently, so much more filling was required, and was necessarily put in.

Being thus narrowed down to the question of fact above referred to, it is indisputable that, from the terms of the contract, the engineer's return and certificate, unless they can be successfully attacked, furnish conclusive evidence of the measurements in accordance with which the plaintiffs would be entitled to payment.

As was said in O'Brien v. Mayor, etc. (Cir. Ct.) 15 N. Y. Supp. 520:

"When the certificate is given, it is conclusive upon the parties. In the absence of proof of corruption or bad faith or misconduct on the part of the person designated, or palpable mistake appearing on the face of the certificate, neither party can be allowed to prove that such designated person decided wrongfully as to the law or facts."

Byron v. Low, 109 N. Y. 291, 16 N. E. 45; Sweet v. Morrison, 116 N. Y. 32, 22 N. E. 276; Phelan v. Mayor, etc., 119 N. Y. 86, 23 N. E. 175; Delaware & Hudson Canal Co. v. Pennsylvania Coal Co., 50 N. Y. 266.

The same ruling was made in Wyckoff v. Meyers, 44 N. Y. 143; Whiteman v. Mayor, etc., 21 Hun, 117, citing Butler v. Tucker, 24 Wend. 447, and other cases.

We have recently had occasion to consider the same question in the case of Burke v. City of New York, 7 App. Div. 128, 40 N. Y. Supp. 81, where it is said that where the question does not relate to misconstruction of the contract, but merely with respect to the amount of work done and materials furnished, the engineer's certificate, if made in good faith, is final, when, as in this case, it is made so by the terms of the contract. It is upon this view of the case that the plaintiffs have based their action. Recognizing it, they have alleged that the engineer in charge of the work has refused to certify properly the amount of work done thereunder, but has made and filed "a wrong, false, and untrue certificate, and has refused, upon proper demand, to file a proper certificate," and "that the said certificate made by the said engineer in charge of the work under said contract was false, fraudulent, untrue, and made in bad

faith." It was necessary for the plaintiffs to prove that allegation before they could remove the obstacle standing in their way of the return and certificate made by the engineer. Of its being false, fraudulent, or made in bad faith, there is not one word of proof, nor that the computations or measurements of the engineer have resulted in any way from a misconstruction of the terms of the contract, as was or might have been the fact in the case of Burke v. City of New York, supra; and it was upon the theory that the engineer may have misconstrued the contract in that case that it was held that it should have gone to the jury. But in the case at bar there is nothing in the contract that has been misconstrued, nor do the parties seem to differ with relation to the construction of that contract. Both agree as to what is meant by the Thirty-First clause respecting "the levels taken upon the present surface of the grounds to be filled." The difference between the parties is simply as to the propriety of the methods resorted to, to ascertain the levels. Even upon this subject of methods and results of measurements, as the case was developed, there were such differences as to the amount of filling put in by the contractors that it was left to the jury to say whether it was 17,156 yards or 12,899 yards or 7,593 yards or 2,278 yards more than the 138,749 yards certified to in the final certificate of the engineer. The whole contest, therefore, was simply one respecting the amount of material furnished for this filling in under the contract, and upon that subject the final certificate of the engineer was conclusive upon the parties; and for this reason we think that the court below was wrong in submitting the case to the jury, and that the motion for a nonsuit should have been granted.

Judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.