MORAN BROS. CONTRACTING CO., INC., Plaintiff, *v.* CITY OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, March 19, 1935.

*Macklin, Brown, Lenahan & Speer [Gerald J. McKernan* of counsel], for the plaintiff.

*Paul Windels [Nelson Rosenbaum* of counsel], for the defendant.

GARSIDE, J. This is a motion by the defendant, City of New York, to dismiss the complaint herein pursuant to the provisions of rule 113 of the Rules of Civil Practice, upon the ground that the second, third and fourth defenses are sufficient as a matter of law. The court holds that the fourth defense, viz., the Statute of Limitations, is not sufficient as a matter of law. This conclusion appears inescapable in view of the record and the decision of the Appellate Term hereinafter described which authorized the commencement of a new action. There remain for consideration the second and third defenses.

In the year 1928 the city of New York entered into a written contract with the plaintiff for the furnishing and delivery by the plaintiff to the bureau of highways, borough of Queens, of 8,000 tons of steam ashes, in scows alongside of dock at Asphalt Plant No. 1, Flushing, N. Y., at a price of one dollar and seventy-five cents per ton. The contract was in all respects regularly awarded and, by its terms, provided, among other things, as follows:

" 11. To prevent all disputes and litigations the President shall determine in all cases the quantities or qualities of materials which are to be paid for under this contract; he shall determine all questions in relation to the said materials, decide every question which may arise relative to the execution of the contract by the Contractor, and his decision shall be final and conclusive upon the Contractor and a condition precedent to the right of the Contractor to receive any money under the contract.

" 12. The President shall, at the end of each calendar month during which materials have been delivered and accepted, prepare an estimate of the quantity and value thereof at contract prices. Upon such estimate being approved by a certificate in writing, signed by him and filed in the office of the Comptroller, The City shall pay to the Contractor the amount of such estimate. The second and each subsequent estimate shall also show the amount previously certified under the contract. The City or the Comptroller shall at all times reserve and retain out of said payments or any of them, all such sum or sums due to the City which by the terms hereof or of any law of the State of New York or of any ordinance of The City passed prior to the date hereof, The City or the Comptroller may be authorized to reserve or retain. Each of said estimates shall be binding and conclusive on the Contractor."

" PAYMENT. Payment shall be made for the number of tons of steam ashes delivered and accepted at the price bid per ton."

Plaintiff entered upon performance of the contract and delivery was made of upwards of 2,000 tons without dispute and payment was duly made therefor. The plaintiff claims that on or about

August 20, 1928, it delivered 372 tons of ashes to the defendant at Asphalt Plant No. 1, Flushing, pursuant to the terms of the contract. On or about the 31st day of August, 1928, plaintiff presented its bill for payment of $651, the contract price for said 372 tons of ashes, and payment was refused, the city claiming that the ashes were never delivered as claimed. This is the particular item in controversy.

Suit was in due course brought by plaintiff against defendant in this court and after trial a verdict was rendered in favor of plaintiff. Upon the trial of the action the court submitted to the jury the question of whether or not the ashes were actually delivered. This appears to have been done with the express approval of both parties to the action. Thereafter a motion to set aside the verdict was granted by the trial court apparently on the grounds that a claim had not been properly filed with the borough president's office and that sections 11 and 12 of the contract were conclusive and binding upon the plaintiff. Notwithstanding the granting of the motion to set aside the verdict the court wrote an opinion in which it held that there was sufficient evidence to sustain the finding of the jury that the 372 tons of steam ashes had actually been delivered as claimed by the plaintiff.

An appeal was taken by the plaintiff to the Supreme Court, Appellate Term, First Department. The Appellate Term affirmed the judgment, but, in a memorandum opinion, held that such affirmance was without prejudice to a new action "after plaintiff shall have submitted the disputed question of delivery to the borough president, as provided by article 11 of the contract."

Subsequently on or about March 30, 1933, a claim was filed with the president of the borough of Queens, thereby submitting to the borough president the disputed question of delivery as the decision of the Appellate Term permitted. On June 20, 1934, thirteen months later, a hearing was had before the borough president. On December 11, 1934, six months thereafter, the borough president disallowed the plaintiff's claim.

Plaintiff thereupon commenced a new action with respect to the same disputed item and this is the action now before the court on defendant's motion to dismiss the complaint.

The second and third defenses, which it is claimed by defendant are sufficient in law, are as follows:

"*Second defense.* That the plaintiff delivered under said contract between August 9, 1928, and September 4, 1928, 2,896 tons of steam ashes and the President of the Borough of Queens on November 21, 1928, so certified to, for which plaintiff was paid, all of which is conclusive and binding upon the plaintiff."

"*Third defense.* That the determination of the Borough President, in disallowing plaintiff's claim for 372 tons of steam ashes, alleged to have been delivered by plaintiff under Contract Finance Department #89652, as the arbiter specified in Article 11, is conclusive, final and binding upon the plaintiff."

It will be seen that the second and third defenses are in effect the same and for the purpose of this opinion may be treated as one.

Defendant contends that the determination of the borough president as to the quantity of steam ashes delivered under the contract is binding, final and conclusive upon the plaintiff. It further contends that the power given to the borough president is that of an arbitrator; that his estimate or determination cannot be set aside unless a palpable mistake appears in the estimate itself, *i. e.,* on its face, or there is proof of corruption, bad faith or misconduct on his part; that a court has no general supervision over the awards of arbitrators; and that it cannot reinvestigate the award. Defendant cites in support of its contentions *Sweet* v. *Morrison* (116 N. Y. 19); *Sewer Commissioners* v. *Sullivan* (11 App. Div. 472); *Barash* v. *Board of Education* (226 id. 249); *Lawrence* v. *Mayor* (29 id. 298); *Burns* v. *City of New York* (69 id. 214), and *Molloy* v. *Village of Briarcliff Manor* (145 id. 483).

Plaintiff contends that the determination of the borough president is not binding, final and conclusive, but is subject to judicial review; that the decision of the Appellate Term in effect so held; that the intent of the Appellate Term, as evidenced by its memorandum opinion, was to permit a judicial review after plaintiff had complied with essential conditions precedent; that such conditions precedent having been fully complied with, the plaintiff is now entitled to what will be in effect a trial upon the merits. (Plaintiff, in fact, goes further and argues that there are grounds for summary judgment for plaintiff but the court rejects such contention.) Plaintiff cites the following cases: *Tibbits* v. *Phipps* (30 App. Div. 274); *O'Brien* v. *Mayor* (15 N. Y. Supp. 520); *Atlantic Gulf & Pacific Co.* v. *Woodmere Realty Co.* (156 App. Div. 351); *Wright* v. *Rousens* (133 N. Y. 298); *Vacuum Cleaner Co.* v. *Broadway Cortlandt Co.* (78 Misc. 174); *Crouch* v. *Gutmann* (134 N. Y. 45); *Thomas* v. *Stewart* (132 id. 580); *Smith Contracting Co.* v. *City of New York* (240 id. 491); *Johnson* v. *City of New York* (191 App. Div. 205; affd., without opinion, 231 N. Y. 564); *Meads & Co.* v. *City of New York* (191 App. Div. 365); *Ross* v. *City of New York* (85 id. 611); *Devlin* v. *City of New York* (124 id. 184); *Doll* v. *Noble* (116 N. Y. 230); *Bowery National Bank* v. *Mayor* (63 id. 336), and *MacKnight Flintic Stone Co.* v. *Mayor* (160 id. 72).

Although the question involved is of no little importance, the court does not feel it necessary to review here the respective lines of cases cited above. The court is of the opinion that the line of cases cited by the city of New York and reviewed in its brief are not applicable or, in so far as they may be otherwise applicable, the court declines to follow them in the determination of this particular controversy in view of the decision and opinion of the Appellate Term upon the appeal from the previous judgment herein. The court is of the opinion that the decision of the Appellate Term on the appeal from the previous judgment herein if properly construed authorizes a judicial review of the act or acts of the borough president in disallowing plaintiff's claim herein. Otherwise, the decision of the Appellate Term in authorizing the commencement of a new action after submitting the disputed question of delivery to the borough president would not appear to make sense. For if, after submission, the borough president had allowed the claim there would presumably be no need of suit. It would, therefore, appear that the Appellate Term contemplated a rejection of the claim by the borough president. Notwithstanding, therefore, the decision of the borough president of Queens, after the submission of the question to him pursuant to the provisions of article 11 of the contract, this court is of the opinion that there remains a triable issue. It is probably true that the burden of proof rests upon the plaintiff to establish that the decision of the borough president was either arbitrary or unreasonable, or fraudulent or palpably erroneous, and should be overridden on these or one of these or other grounds. Notwithstanding the substantial character of such a burden the plaintiff is entitled to its opportunity to sustain it. The courts cannot be arbitrarily ousted of their jurisdiction nor can a citizen be arbitrarily required to surrender his right to establish a breach of contract before a court of competent jurisdiction. It is more imperative than ever before that courts, be they of superior or inferior jurisdiction, zealously safeguard that most fundamental principle of our system of jurisprudence, the principle that ours is a government of laws, not of men, whether in city, State or nation. Arbitrariness in public officials should never be accorded the protection of the law. The borough president of Queens may be entirely right in his decision. The plaintiff contends that he is entirely wrong. Plaintiff should be and is entitled to prove that contention. Otherwise the borough president could arbitrarily hold that the ashes in question had not been delivered in the face of overwhelming, inescapable and irrefutable evidence that they had been or even in the face of his own personal knowledge that they had been. This would obviously be repugnant to American

conceptions of government. The Appellate Term in effect ruled that the plaintiff was entitled to a trial upon the merits if and when he complied with a requirement which was apparently deemed by the Appellate Term to be a necessary condition precedent to such trial. Such compliance having been had, plaintiff is now entitled to its trial. The court can no more dispose of the question before it arbitrarily than can the borough president.

The court is not unmindful of the fact that plaintiff's complaint may be defective in that it fails to allege that the act of the borough president in refusing to certify the claim was arbitrary, unreasonable or otherwise vulnerable. The court is of the opinion, however, that under our liberal practice plaintiff should not in view of all the circumstances of the case suffer because of this fact. Such defect, if one there be, may be cured by amending the pleading before trial.

Motion for judgment on the pleadings is, therefore, denied, with ten dollars costs.