JAMES S. SMITH and DE WITT C. HANFIELD, Respondents, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

*Certificate of an engineer as to work done — when not impeachable by proof that a wrong method was adopted.*

Where a contract provides that the contractor shall be bound by the final certificate of the engineer in charge of the work, such certificate, in the absence of proof of corruption, bad faith or misconduct upon the part of the engineer, or unless a palpable mistake appears upon the face of the certificate, is conclusive.

In the face of such a certificate relative to the quantity of filling done, the contractor cannot be allowed to show that the bottom line or level of the proposed filling, as shown by the maps and plans, was established by an erroneous method, which fixed the line at a point higher than its true place, and that the contractor was, therefore, compelled to do an extra amount of filling.

APPEAL by the defendant, The Mayor, Aldermen and Commonalty of the City of New York, from a judgment of the Court of Common Pleas for the city and county of New York in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 16th day of December, 1895, upon the verdict of a jury rendered after a trial at a Trial Term of said court, and also from an order entered in said clerk's office on the 19th day of

FIRST DEPARTMENT, DECEMBER TERM, 1896.          [Vol. 12.

December, 1895, denying the defendant's motion for a new trial made upon the minutes.

*Theodore Connoly* and *John Proctor Clarke*, for the appellant.

*L. Laflin Kellogg* and *Alfred C. Petté*, for the respondents.

PATTERSON, J. :

There are two causes of action set forth in the complaint herein. On the trial the jury found in favor of the plaintiffs on the issues joined on the first cause of action only. From the judgment entered on the verdict and from an order denying a motion for a new trial the defendant appeals.

The controversy relates to a contract made between one Cox, the plaintiffs' assignor, and the defendant for regulating, grading, draining and improving the easterly portion of the grounds included in Van Cortlandt Park. The contract was awarded to Cox on a bid made by him, but the work was done by the plaintiffs and to the full satisfaction of the commissioners of the department of public parks, expressed and certified by their engineer, as required by the contract. The whole work contracted for consisted of various items of excavation, of sewer building, of masonry, and of filling in and top soil, all the materials for which were furnished by the plaintiffs. On the trial, the contest was narrowed down to the one item of the amount of material supplied for filling and top soil, and placing the same in embankment, which, by the contract, was to be paid for at forty-six cents per cubic yard. The plaintiffs claim that they furnished and put in place 155,819 cubic yards, according to measurements asserted by them to have been made correctly and in accordance with the terms of the contract, while the engineer of the park commissioners insisted and certified that the measurements, as he finally ascertained and fixed them, showed that only 138,747 cubic yards had been furnished by the plaintiffs.

The section of the contract under which the dispute arises is as follows : " The filling or embankment below the top soil to be placed thereon will be measured and computed from the levels taken upon the present surface of the grounds to be filled, *and no allowance for settlement or shrinkage will be allowed or paid for.*" There was no way of ascertaining by count or tally the exact amount of filling

furnished by the plaintiffs; and the section of the contract thus quoted establishes the only method by which a computation of it can be made. It was thoroughly understood that the measurements were to be approximate. It was further provided in the contract that the return of the engineer appointed by the commissioners of the department of public parks in charge of the work should be the account by which the materials furnished and work done should be computed, and also that the contractor should not be entitled to demand or receive payment for any portion of the work or materials until the same should be completed in the manner set forth in the contract, and such completion be duly certified by the engineer in charge of the work, and until each and every stipulation of the contract had been performed to the satisfaction of the commissioners of the department of public parks and accepted by them; and, also, that the contractor should not be entitled to demand or receive payment for any portion of the work or materials until the engineer should have certified that the work had been done and the materials furnished in accordance with the terms of the agreement; and it was further stipulated that the action of the engineer, by which the contractor was to be bound and concluded, according to the terms of the contract, should be evidenced by a final certificate, which final certificate might be made without notice to the contractor of it, or of the measurements upon which the same was based.

The contract was entered into after proposals for the work were published and biddings made. Plans and specifications of the work to be bid for were prepared, which plans and specifications were examined by Mr. Cox before he put in his bid, and that bid was made and accepted with full knowledge of certain conditions of which particular notice was given, and among them the following: "Bidders must satisfy themselves by personal examination of the location of the proposed work and by such other means as they may prefer, as to the accuracy of the foregoing engineer's estimate, and shall not at any time after the submission of an estimate dispute or complain of such statement or estimate, nor assert that there was any misunderstanding in regard to the depth or character of the excavation to be made or the nature or amount of the work to be done." And also that "bidders will be required to complete the

entire work to the satisfaction of the commissioners of the depart-
ment of public parks and in substantial accordance with the specifi-
cations hereunto annexed and the plan therein referred to." The
plans and specifications referred to are the same plans and specifi-
cations mentioned in the contract, and the contractor stipulated in
the contract that he would in every respect strictly conform to
those specifications and plans, and that he would not at any time
assert that there was any misunderstanding in regard to the nature
of the work " or the nature or amount of the materials to be fur-
nished, or work to be done, and he covenants and agrees that he will
complete the entire work ＊ ＊ ＊ in substantial accordance
with said specifications and the plans therein mentioned." Upon
one of the plans (defendant's Exhibit No. 2) there is a series
of cross sections showing the top and bottom lines of filling, and
it is upon these lines that the engineer ascertained and certified the
amount of filling that had been done. The surface of the ground
referred to in the clause of the contract first above quoted is
represented by the bottom line, being that level upon which the
material filled in would find a solid support and would rest. As
the proof developed the case, the only question appeared to be the
accuracy of that bottom line and the correctness of the engineer of
the park department in establishing that bottom line. The engineer
of the park department testifies as to the method by which he made
the examination of the ground in order to ascertain where this bot-
tom line, indicating the surface of the ground to be filled, should be
drawn. Testimony on behalf of the plaintiffs was given by an
engineer who stated that not only was the method resorted to by
the city to ascertain the true level erroneous, but that he employed
different and proper means for ascertaining it, from which it was
claimed that the real surface of the ground to be filled was lower than
that fixed by the department, and that consequently so much more
filling was required and was necessarily put in.

Being thus narrowed down to the question of fact above referred
to, it is indisputable that, from the terms of the contract, the engineer's
return and certificate, unless they can be successfully attacked, furnish
conclusive evidence of the measurements in accordance with which
the plaintiffs would be entitled to payment. As was said in *O'Brien*
v. *The Mayor* (15 N. Y. Supp. 520); " when a certificate is given, it is

conclusive upon the parties, and, in the absence of proof of corruption, bad faith or misconduct on the part of the person designated, or palpable mistake appearing on the face of the certificate, neither party can be allowed to prove that such designated person decided wrongfully as to the law or facts." (*Byron* v. *Low*, 100 N. Y. 291; *Sweet* v. *Morrison*, 116 id. 32; *Phelan* v. *The Mayor*, 119 id. 86; *Pres., etc., D. & H. Canal Co.* v. *Pa. Coal Co.*, 50 id. 266.) The same ruling was made in *Wyckoff* v. *Meyers* (44 N. Y. 143); *Whiteman* v. *The Mayor* (21 Hun, 117), citing *Butler* v. *Tucker* (24 Wend. 447) and other cases. We have recently had occasion to consider the same question in the case of *Burke* v. *The Mayor* (7 App. Div. 128), where it is said that where the question does not relate to misconstruction of the contract, but merely with respect to the amount of work done and materials furnished, the engineer's certificate, if made in good faith, is final, when, as in this case, it is made so by the terms of the contract. It is upon this view of the case that the plaintiffs have based their action. Recognizing it, they have alleged that the engineer in charge of the work has refused to certify properly the amount of work done thereunder, but has made and filed "a wrong, false and untrue certificate," and has refused, upon proper demand, to file a proper certificate, and "that the said certificate made by the said engineer in charge of the work under said contract was false, fraudulent, untrue and made in bad faith." It was necessary for the plaintiffs to prove that allegation before they could remove the obstacle, standing in their way, of the return and certificate made by the engineer. Of its being false, fraudulent or made in bad faith, there is not one word of proof nor that the computations or measurements of the engineer have resulted in any way from a misconstruction of the terms of the contract as was or might have been the fact in the case of *Burke* v. *The Mayor* (*supra*), and it was upon the theory that the engineer may have misconstrued the contract in that case that it was held that it should have gone to the jury. But in the case at bar there is nothing in the contract that has been misconstrued, nor do the parties seem to differ with relation to the construction of that contract. Both agree as to what is meant by the 31st clause respecting "the levels taken upon the present surface of the grounds to be filled." The difference between the parties is simply as to the propriety of the methods

resorted to to ascertain the levels. Even upon this subject of methods and results of measurements, as the case was developed, there were such differences as to the amount of filling put in by the contractors, that it was left to the jury to say whether it was 17,156 yards or 12,899 yards, or 7,593 yards or 2,278 yards, more than the 138,747 yards certified to in the final certificate of the engineer. The whole contest, therefore, was simply one respecting the amount of material furnished for this filling in under the contract, and upon that subject the final certificate of the engineer was conclusive upon the parties, and for this reason we think that the court below was wrong in submitting the case to the jury and that the motion for a nonsuit should have been granted.

The judgment must be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., RUMSEY, WILLIAMS and INGRAHAM, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.