(66 App. Div. 455.)

THILEMANN et al. v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   December 6, 1901.)

1. MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—CONTRACTS—PAYMENT—
   ENGINEER'S CERTIFICATE—FRAUD.
      Where a party contracts with a city to fill in a street, and the con-
   tract recites that all quantities of work and materials are to be deter-
   mined by the city engineer according to the plans and specifications,
   and that no allowance shall be made for any excess above the quanti-
   ties required by such plans, nor for shrinkage or settling, recovery can-
   not be had for filling over and above that set out in the city engineer's
   certificate, in the absence of a showing of fraud or bad faith in the
   engineer in making the certificate.

2. SAME—MISTAKE IN CERTIFICATE—INDICATION OF FRAUD.
      In such instance a difference between the amount called for by the
   engineer's certificate and that claimed by the contractor of only 15,000
   cubic yards, in a total of about 90,000 cubic yards, is not so gross as to
   indicate fraud.

3. SAME—ACTION FOR RECOVERY—JURY—SUBMISSION OF ISSUE.
      Where a contractor to fill in a city street has founded his cause of
   action against the city on the wrongful character of the engineer's
   certificate, and defendant objects to the admission of evidence as to
   the amount of filling supplied, on the theory that the certificate was
   conclusive, and excepts to the submission of the action to the jury on
   the plaintiff's right to recover for additional filling rendered necessary
   by defendant's negligence, it cannot be said that defendant allowed
   the case to go to jury on the latter cause of action, which had not been
   pleaded.

4. SAME—EVIDENCE—SUFFICIENCY.
      Where, in an action against a city by a contractor to recover for ad-
   ditional filling in of a street, claimed to have been rendered necessary
   by reason of a broken water main washing material away, it appears
   that two other causes contributed to the necessity for such extra filling,
   but it is not shown how much each contributed, a finding of a definite
   sum in damages will be set aside as not supported by the evidence.

5. SAME.
      Where, in an action against a city by a contractor to recover a sum
   of money retained by the city because of plaintiff's exceeding the time
   within which the work should have been completed, it appears that
   causes which plaintiff had agreed to be responsible for, as well as acts
   and neglect of the city, contributed to cause such delay, but the amount
   contributed by each is not shown, plaintiff cannot recover, as the bur-
   den of showing such amounts is on him.

6. SAME.
      Where, in an action by a street-improvement contractor against a
   city to recover damages claimed to have been sustained by reason of
   increased cost and expense incurred through the acts of a certain cor-
   poration with permission from the city, it appears that the only extra
   expense incurred was in rehandling material used in refilling, but the
   only evidence as to the amount so rehandled was by one party, who
   testified that he would say it was a certain number of cubic yards, a ver-
   dict for plaintiff will be set aside as unsupported by evidence.

Appeal from trial term, New York county.

Action by Frederick Thilemann, Jr., and another, against the
mayor, aldermen, and commonalty of the city of New York.   From
a judgment for plaintiffs, and an order denying a new trial, defendant
appeals.   Reversed.

Argued before VAN BRUNT, P. J. and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Chase Mellen, for appellant.

L. L. Kellogg, for respondents.

PATTERSON, J.    This appeal is from a judgment in favor of the plaintiffs entered upon the verdict of a jury, and from an order denying a motion for a new trial.    Three causes of action are set forth in the complaint, and in submitting the cause to the jury the trial judge required them to make a special finding with respect to each of the three causes of action separately.    On the first cause of action the jury found for the plaintiffs in the sum of $1,750; on the second, $450; on the third, $4,500.    The plaintiffs were contractors with the city of New York for regulating, grading, and paving Jerome avenue from 162d street to Elliot street.    In the performance of that contract the plaintiffs were required to furnish certain filling, and by the first cause of action they sought to recover for 15,000 cubic yards of filling which they allege they furnished over and above the amount certified by the engineer and inspectors upon the work.    The contract contained the provision that the contractor should be bound and concluded by the final certificate of the engineer.    It also provided that all quantities of work and materials to be paid for should be measured and determined by the engineer and his assistants according to the plans and the working lines that might be given and the specifications when the work came up to such lines, and that no allowance should be made for any excess above the quantities required by such plans, lines, and specifications on any part of the work, and, further, that all loss or damage arising out of the nature of the work to be done or from the action of the elements was to be sustained by the contractor; also that an embankment which formed part of the work should be maintained at its designated width and grade until finally accepted, and no allowance would be made to the contractor for shrinkage, sinkage, or settlement.    The final certificate of the engineer stated that the plaintiffs had furnished, in the progress of the work, 72,297.05 cubic yards of filling.    The plaintiffs claim that they had placed in the work 90,871 cubic yards of such filling.    The contract price of the filling was 30 cents a cubic yard.    The plaintiffs claim for 15,000 cubic yards, apparently making an allowance of about 3,000 cubic yards for sinkage or shrinkage.    In drawing the complaint the pleader evidently recognized that the final certificate of the engineer was an obstruction to the right of the plaintiffs to recover, and that certificate was attacked; it being alleged in the first as well as in the second cause of action that the engineer and inspector or inspectors in charge of the work under the contract made certificates that were false and untrue, and given in bad faith and under a misconstruction of the contract.    It has been held that, where parties to a contract of this character had provided for a final and conclusive estimate of an engineer as an essential prerequisite to any payment of the contractor, the provision of the contract shall be taken as binding, and that the contractor is conclud-

ed thereby, and that, where a certificate is given, it is conclusive upon the parties, in the absence of proof of corruption, bad faith, or misconduct on the part of the person signing the certificate.. It was held in Smith v. City of New York, 12 App. Div. 391, 42 N. Y. Supp. 522, that, in the face of a certificate relating to the quantity of filling done on a contract of a character similar to that involved in this action, the contractor could not recover for an extra amount of filling unless he alleged and proved facts which would impeach the certificate as false, fraudulent, or made in bad faith, or unless the final certificate was based upon an erroneous construction of the contract. Burke v. City of New York, 7 App. Div. 128, 40 N. Y. Supp. 81. Unquestionably, there may be such a gross mistake in a final certificate as would indicate fraud, or at least bad faith, in which case the contractor would not be concluded; but in the case before us there is no evidence of actual fraud or bad faith, nor can either of those qualities be impressed upon the certificate in consequence of a gross mistake appearing either upon the face of the certificate or extrinsically. When the evidence is critically examined, in connection with the provisions of the contract respecting the filling to be done, and the duty of the contractor respecting the filling to be furnished, it does not appear that such a mistake as would avoid the effect of the certificate was made. True the final certificate of the engineer was, or might have been, based upon measurements made when the work was completed; but the plaintiffs were not entitled to any allowance for settlement or shrinkage of the embankment, or for the action of the elements. The indefiniteness of the evidence with respect to the causes which required additional filling renders it impossible to conclude that any serious mistake was made by the engineer or inspectors in their measurements, or in the final certificate by which the plaintiffs agreed to be bound. The plaintiffs, not having made proof of their allegation respecting the falsity or fraudulent character of the certificate, were not entitled to recover on this first cause of action.

At the close of the plaintiffs' case in chief a motion was made to dismiss the complaint on the ground that they had failed to establish a cause of action against the city. The defendant's counsel had previously moved to strike out testimony given by the plaintiffs as to the amount of filling they had furnished, and certain other testimony connected with that subject; and he expressly moved again to strike out that testimony, and that the first cause of action be dismissed. The court denied the motion, saying that it did not appear that the contract between the parties covered the contingency of the plaintiffs, through the willful act or negligence of the city, being obliged to do work in addition to that required by the contract; that in such case the plaintiffs were entitled to recover the value of that additional work in the way of labor or material or both, and all that the inspector or engineer was required to do was to furnish a certificate of the work that actually remained and appeared in sight and was a subject of measurement; and that if additional material were consumed for a cause which originated through and was entirely due to the negligence of the city, and which was not contemplated in

the contract, and should not be subject-matter of a certificate, the contractor was entitled to recover for that, independently of the amount agreed upon in the contract.   To that ruling an exception was taken.   The rule of law which the learned judge had in mind was evidently that laid down in Horgan v. City of New York, 160 N. Y. 516, 55 N. E. 204, and Mulholland v. Mayor, etc., of City of New York, 113 N. Y. 631, 20 N. E. 856.   No such claim or cause of action is counted upon in the first cause of action as would render that rule applicable.   If we are correct in our construction of the complaint as to that cause of action, it is founded upon the wrongful character of the certificate, and not upon any neglect of the city.   In submitting the case to the jury, the learned judge made no reference to the averments of the complaint concerning the falsity of the certificate, but sent that cause of action to the jury on the plaintiffs' right to recover for negligence.   It is insisted by the counsel for the plaintiffs that the defendant allowed the case to go to the jury on the theory of negligence, but an exception was properly taken to the charge of the judge on that subject, and at an early stage of the trial the defendant's counsel specifically objected to evidence as to the amount of filling the plaintiffs had furnished.   One of the plaintiffs was called as a witness, and on his examination his counsel asked him the following question:   "Q. This contract, in its preliminary estimate, calls for the furnishing of 75,000 cubic yards of fill.   How much fill did you furnish?"   This was objected to on the ground that the contract makes the final certificate of the engineer conclusive upon that point, and the court ruled that it was a mere question of the order of proof, and that it would admit the evidence, subject to being stricken out unless material proof necessary to make the city answerable for it was introduced subsequently, and took it subject to the motion to strike out, which motion was afterwards made and denied.   We do not find, therefore, in the record, that the counsel for the defendant allowed the case to go to the jury on a cause of action not pleaded.   But, if there were no error in the submission of the case to the jury on the theory on which it was left to them, the verdict should be set aside as being against the evidence.   We can find no basis upon which the jury, otherwise than arbitrarily, could have found a verdict for $1,750 for the plaintiffs on this cause of action.   The plaintiffs claimed to be entitled to compensation for 15,000 cubic yards of additional filling at 30 cents a cubic yard, because they were obliged to furnish that filling in place of a quantity which had been washed away from the work by reason of leaks in the Croton water main.   It appeared in evidence that there were some leaks which may have washed away some filling, and that the material thus washed away had to be replaced.   It also appeared that much material was lost in the embankment by shrinkage, and that still other quantities of such filling were washed away by the tides.   The learned judge charged the jury that they must distinctly understand that unless the filling, or a portion of the filling, for which the plaintiffs have not received payment, was washed away by reason of leaks in the Croton water main, the plaintiffs could not recover for extra filling; that the

burden of proof was upon the plaintiffs to establish by a fair preponderance of evidence the fact that a certain quantity of filling which they had placed in the excavation, and used on the contract, was washed away by reason of leaks in the Croton water main, and, if the extra filling was necessitated by any other cause, the plaintiffs could not recover under their first cause of action. Or, to be specific, if any portion of that filling, so to speak, was lost or was displaced by reason of shrinkage or sinkage or settlement of the soil, the plaintiffs could not recover for it. If any portion of that filling was washed away by the tide, the plaintiffs could not recover for it. He instructed the jury, also, that "in determining the amount of filling, if any, for which the plaintiffs can recover, you must take away from the total amount they furnished, as they claimed, the amount for which they were paid, and also the amount which was lost or washed away from all other causes than the leakage, bearing in mind that they do not claim that there was any loss or washing away by reason of the two breaks in the water main." On examining the record to ascertain upon what the jury could have found a verdict for $1,750, which would be for about 5,800 cubic yards, at 30 cents a cubic yard, we are unable to find any other basis than that of conjecture for this result. There is in the case an exhibit upon which much reliance is placed by the plaintiffs, which shows only what quantities were used in filling. It does not show how much was furnished in place of what washed out by the leaks in the water main. This exhibit seems to have been admitted in place of oral testimony, the court saying that the amount mentioned in it was merely to be used as testimony of the amount of filling that was taken from another piece of work upon which the plaintiffs were engaged, and used on the work in this case; but it does not help us in the ascertainment of how much material was washed away by the leaks in the Croton water main. One of the plaintiffs (Mr. Smith) testified that at times, "when the tide rose, it would take the whole business away; so we had to replace the filling from day to day." There is a general statement in the testimony of Mr. Smith that the sinkage might amount to as much as 3,000 cubic yards, but he did not say how much was lost by reason of the rise of the tide. It is evident from the testimony on the part of the plaintiffs that there were three separate causes of the displacement of material which had to be supplied by new filling, namely, washing away caused by the tides, sinkage or shrinkage of the material, and frittering away by leaks in the Croton water main; but how much or what amount was caused by either was a matter only of supposition. There was nothing before the jury from which they could estimate with any approach to reasonable probability the amount to be ascribed to either of the three causes, and therefore the evidence was insufficient to authorize them to find what the court charged them they must find, namely, by a fair preponderance of proof, that a certain quantity of filling which had been placed in the excavation and used on the contract was washed away by reason of leaks in the Croton water main. Of course, it was not necessary for them to find, to a yard,

the exact number of cubic yards carried away by the leaks; but it was necessary for the plaintiffs to adduce enough evidence upon the subject to enable the jury to determine approximately how much of the waste was occasioned by the only cause for which, under the charge of the judge, the city would be liable. Upon any view of the case, therefore, we think the plaintiffs were not entitled to recover on the first cause of action.

The second cause of action is to recover $450 retained by the defendant from the plaintiffs for the alleged reason that they had exceeded by 45 days the time within which the work should have been completed. By the contract 200 days were allowed for such completion. In the final certificate it is stated that 589 days were taken by the plaintiffs in the performance of their contract. The whole of that period was allowed, with the exception of 45 days. Here, again, there is nothing in the evidence to impeach the verity and good faith of the final certificate; but, proceeding to examine the evidence with respect to delay, we find the same indefiniteness on that subject as exists with reference to the first cause of action. The causes of delay seem to have been the necessity of furnishing additional filling; the neglect of the commissioner of public works for the annexed district to give orders respecting work at a particular point in the sloping of the bank; the breaking of a water main; the removal of a large piazza encroaching on the line of the work; putting in receiving basins; the necessity of maintaining a roadway for sewer openings; the laying of a Croton water main on Jerome avenue; and, in addition to all those causes, an interference with the work by reason of the matters alleged in the third cause of action. How many days' delay are actually attributable to each of these causes, we cannot make out from the testimony. Three hundred and forty-four days over and above the 200 fixed by the contract were allowed the contractors, and it is impossible for us to see, on the record before us, that the plaintiffs were entitled to any further allowance.

The third cause of action is independent of the first and second. The complaint, as to this cause of action, sets forth facts which, if proven, would bring that cause of action within the doctrine announced in Horgan v. City of New York, supra; Mulholland v. Mayor, etc., of City of New York, supra; and Messenger v. City of Buffalo, 21 N. Y. 196. But here, again, the plaintiffs' proof failed to furnish a real basis upon which the jury could have found for the plaintiffs in the sum of $4,500, or in any other fixed amount. The plaintiffs claimed that they had sustained damage by increased cost and expense incurred by reason of the placing upon the line of the work and the erection of telephone or telegraph poles by a corporation with the permission or license of the city authorities. The evidence upon this subject tends to show that this increased cost and expense was incurred only in the rehandling of material used as filling. It was sworn to by one of the plaintiffs that they brought stuff from the river on scows; that it was placed upon cars, and dumped from them; that the telephone or telegraph poles were erected on the line of the work, so that the cars could not get within a certain distance of the poles, so that the material

might be dumped from them, and that it had to be shoveled over and over again, so as to get it inside the sidewalk; and that they would not have been obliged to shovel it at all if the cars were in front of the embankment. The witness could not say how many poles were within the limits of the work, but he thought there were some 35. It would seem that the poles merely interfered with the dumping of this filling at or near them. This witness was then asked how many cubic yards of material they were forced to re-handle, and his answer was, "15,000 yards, I should say." That was all the evidence upon which the jury gave the plaintiffs this large sum of $4,500. It is obvious that this testimony as to the 15,000 cubic yards being thus rehandled is a mere guess. No facts were proven to substantiate that guess. It does not amount to the dignity of an estimate, but is only a random conjecture. There is no satisfactory evidence upon which the jury could have found the sum of $4,500, or any other than a nominal sum, for the plaintiffs on this cause of action; and, for the insufficiency or failure of proof as to it, the verdict should not be sustained.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.