## HORAN v. MASON.

(Supreme Court, Appellate Division, Second Department. November 18, 1910.)

1. BILLS AND NOTES (§ 362*)—BONA FIDE HOLDER—OFFICER OF CORPORATION.
   Where notes were made by defendant to the H. M. corporation, and by it indorsed for full value to plaintiff H., president of the corporation, and he indorsed them and had them discounted by a bank, which paid him full value, and, on defendant's failure to pay them, plaintiff paid the amount to the bank, he was a bona fide holder under Negotiable Instruments Law (Consol. Laws, c. 38) § 97, providing that a holder deriving title through a holder in due course and who is not a party to fraud affecting the instrument has all the rights of the former holder, and plaintiff was not to be considered as though he were the payee and chargeable with any fraud on its part notwithstanding absence of personal participation in it.
   
   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 937–943; Dec. Dig. § 362.*]

2. CONTRACTS (§ 343*)—ACTION—PLEADING—ISSUES.
   Where a party seeks to attack as fraudulent a certificate given by his engineer or architect under a contract which in express terms makes such certificate final or conclusive, he must plead the fraud of the engineer or architect affirmatively.
   
   [Ed. Note.—For other cases, see Contracts, Dec. Dig. § 343.*]

Appeal from Trial Term, Westchester County.

Three actions, consolidated, by James J. Horan against Cassity E. Mason. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

See, also, 138 App. Div. 923, 123 N. Y. Supp. 1121.

Argued before WOODWARD, BURR, THOMAS, RICH, and CARR, JJ.

H. D. Bailey, for appellant.
Henry C. Henderson, for respondent.

CARR, J. The defendant made three promissory notes in the sum of $1,000 each, payable to a corporation known as the Horan-Marshall Company, which she refused to pay when they became due. The plaintiff sued as the holder of the notes, and the defendant set up the defense that the notes were given by her as the result of false and fraudulent representations on the part of the payee thereof. The verdict of the jury was for the defendant, and from the judgment entered thereon, as well as from an order denying a motion for a new trial, the plaintiff appeals.

The appellant contends that it appeared from the uncontradicted testimony at the trial that he was a bona fide holder of the notes in due course, and had also succeeded to the rights of a bona fide holder in due course, and that it was error on the part of the trial court to permit the defendant to give evidence of the defense of fraud upon the part of the payee or to submit that question to the jury. It appeared as a part of the plaintiff's case that the notes were made by the defendant and delivered to the Horan-Marshall Company, the payee; that the notes were indorsed by the payee corporation, and delivered

to the plaintiff for full value; that he thereupon indorsed them and had them discounted by a bank at Troy, which paid him the full value thereof, less the usual discount fees; that, when the notes fell due, the bank presented them for payment to the maker, the defendant, who refused to pay them, and that thereupon the plaintiff paid the bank the amounts of the notes and took them up. He sued on the notes as a holder deriving title from the bank, and asserts such title thereto as the bank had. Unquestionably, on the record before us, the bank was a holder for full value, in due course, and without any notice of an infirmity in the notes between the maker and payee. As against it, under well-settled rules of the law of commercial paper, the maker had no defense arising from an infirmity in the transaction between her and the payee. Section 97 of the negotiable instruments law (Consol. Laws, c. 38), provides as follows:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

This provision of the statute declared no new rule, but simply codified a rule of general application in the law of commercial paper which had been applied uniformly in all the reported decisions of the various jurisdictions, and which are so numerous and so continuous as to require no present citation. The principle of the rule arose from the fact that a holder in due course, having acquired an unconditional property right in the instrument, had as a part of such property right power to sell it free from all restrictions even to one who had notice of an infirmity in the instrument. To this rule it is declared by textwriters, and in some adjudged cases, that there is but one exception, and that is that the payee of the note who participated in the infirmity cannot shelter himself behind the rights of a bona fide holder from whom he may have purchased it subsequently. Daniel on Negotiable Instruments, §§ 802–805, inclusive; 7 Cyc. 938, 939; Eckhert v. Ellis, 26 Hun, 663.

An instructive application of the full extent of this rule may be found in Benedict v. De Groot, 1 Abb. Dec. 125, where the facts were as follows: The plaintiff sued the makers of a promissory note payable to one Darling. Darling indorsed the note and delivered it to the plaintiff, who had notice that as between the makers and the payee there was an infirmity in the title. He thereupon procured one Oakley to indorse the note and have it discounted at a bank, which paid the proceeds of the discount to Oakley. When the note became due, the plaintiff took it up from the bank, paying the amount thereof. Then he sued both the makers and the payee. A verdict was directed in his favor, and on appeal to the Court of Appeals it was held that the direction of a verdict was proper, notwithstanding that the note was impeached and evidence offered to show his knowledge of the infirmity thereof. Another case very illustrative of the general rule is that of Flint v. Schomberg, 1 Hilt. 532. In that case the defendant made a note to his own order, and indorsed it, and delivered it to a firm of Porter & Co. That firm paid the plaintiff a commission to indorse the

note so that it might be discounted by a bank. The plaintiff indorsed the note, and procured its discount. When it became due, it was dishonored and protested. The plaintiff thereupon paid the bank the amount due and took up the note and then sued the maker. It was held that, as the bank was a bona fide holder, the plaintiff by taking up the note became subrogated to all the rights of the bank, and that, as the bank as a bona fide holder could not be met with any defense as to the equities between the original parties, neither could the plaintiff. Perhaps the best considered case applying the exception to this rule to the payee of the note who subsequently purchases from a bona fide holder is that of Kost v. Bender, 25 Mich. 515.

In the case at bar the plaintiff was not the payee of the note, and the exception to the general rule cannot apply as against him, as he did not personally participate in any fraud connected with the making and delivery of the note, if there was any fraud, even though he might be chargeable with actual or constructive notice of it. The payee of the note was a corporation, the Horan-Marshall Company. The plaintiff was its president when the note was delivered and when it was transferred to him individually by indorsement. The respondent contends that under these circumstances the plaintiff is to be considered as if he were the payee, and that any fraud of the corporation must be charged to all its officers as if it were their personal fraud, notwithstanding any absence of personal participation in it. This contention is based upon familiar authorities which charge a corporation with the knowledge of any of its officers acquired in the course of their duty; but, if there be any authority for the proposition that the knowledge so imputed to a corporation, in order to bind it, is again imputable to others of its officers in order to bind them personally, it is not cited to us. That there is authority for this proposition may well be doubted. If it be a matter of first impression, it may be said that the contention has no reasonable basis.

As this case stood at the trial, it was error to permit as against the plaintiff proof of the defense of fraud in the inception of the notes over the specific objection of the plaintiff, and it was likewise error to deny his motion for a direction of the verdict.

Assuming, however, for the purposes of further consideration, that the trial court was correct in its theory that the defense pleaded could be proved against the plaintiff, there were several serious errors committed even under the theory according to which the court conducted the trial. The payee of the notes was doing certain work in the way of constructing a steam heating plant on the premises of the defendant. This work was being done under written specifications prepared by an engineer employed by the defendant. These specifications contained a clause as follows:

"The engineer shall be the final judge in the matters of dispute in reference to methods of procedure, quality of materials or workmanship, competency of workmen or subcontractors, conflict of work by different contractors, tests, intent and meaning of plans and specifications, progress of work, etc., and his decision shall be final and binding in all cases."

The contract between the parties contained no provision as to time of payment by the defendant, but the parties adopted mutually

a system of part payments as the work progressed under certificates by the engineer. Several thousand dollars had been so paid before the delivery of the notes in suit. The notes in question were delivered under circumstances as follows: The engineer wrote to the defendant as follows:

"Please give the Horan-Marshall Co. five thousand dollars ($5,000) on account. The work completed amounts to $12,000.00, while the total amount they have received to date is $6,000.00."

This letter is dated November 19, 1906. In the meantime, the corporation, Horan-Marshall Co., had been writing to the defendant asking further payments on account on the plea that they needed money to meet large expenditures caused by the performance of the work. The defendant, however, did not then comply with the requests of the contractor or the direction of her engineer. She wrote to her engineer remonstrating against his direction to her to pay $5,000, on the ground that· she had some understanding with the contractor to await her convenience as to payments. After some further delay and correspondence, she delivered to the contractor in December $1,000 in cash and three notes for $1,000 each, making in all $4,000. While in her answer she pleaded that she made this payment and delivered the notes in question on the express representations of the contractor that all the work already done had been done according to the specifications and all the work remaining to be done would be done in the same manner, yet it was apparent from the proofs that the inducing cause of the execution and delivery of the notes was the fact that her own engineer had certified that the contractor had done work enough under the contract to justify the payments which it asked. To meet this situation, the trial court permitted the defendant to give evidence to show that the engineer's certificate was fraudulent. The evidence offered to show fraud either on the part of the contractor or the engineer was confined to a showing that certain underground steam pipes connecting a boiler house with the main building were not laid in accordance with the specifications in very important details. The trial court held that the defendant was bound by the certificate of her engineer unless it was shown that he acted in bad faith in giving the certificate, and he so charged the jury at length, submitting to them an issue as to the "honesty" of the engineer. All this was done over objection and exception by the plaintiff. There was nothing in the defendant's answer which in any way informed the plaintiff that any issue would be tendered as to fraud on the part of the engineer in giving the certificate which induced the delivery of the notes, or fraud on the part of the plaintiff in procuring the certificates. Under the issues as framed by the pleadings, the good faith of the engineer was not a question to be submitted to the jury. Where a party seeks to attack as fraudulent a certificate given by his engineer or architect under a contract which in express terms makes such certificate final or conclusive, he must plead the fraud of the engineer or architect affirmatively. N. Y. Building Co. v. Springfield Elevator Co., 56 App. Div. 294, 67 N. Y. Supp. 884; Everard v. The Mayor, 89 Hun,

425, 35 N. Y. Supp. 315; Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276, 15 Am. St. Rep. 376; Sewer Commissioners v. Sullivan, 11 App. Div. 472, 42 N. Y. Supp. 358, s. c. 162 N. Y. 594, 57 N. E. 1123; Smith v. The Mayor, 12 App. Div. 391, 42 N. Y. Supp. 522.

Therefore, on the theory which prevailed at the trial, reversible error was committed in the particulars just specified.

There are other objections offered by the appellant against the judgment appealed from, which, though interesting and important, are not at present discussed, for the reason that enough has been shown to require a reversal of the judgment and the granting of a new trial.

Judgment and order reversed and a new trial granted, costs to abide the event. All concur.