E. E. SMITH CONTRACTING COMPANY, Appellant, Respondent, *v.*
THE CITY OF NEW YORK, Respondent, Appellant.

First Department, May 2, 1924.

Municipal corporations — action on elevated railroad construction con-
tract to recover amount certified by engineer — plaintiff cannot go
behind certificate of engineer except for falsity, fraud or bad faith —
plaintiff cannot recover cost plus ten per cent on certain extra work
on theory that engineer erroneously classified work — complaint does
not state cause of action — evidence does not warrant setting aside
engineer's certificate — engineer properly classified work — defendant
is not liable for premiums paid by plaintiff for workmen's compensation
insurance.

In an action based on a contract for the construction of an elevated railroad to
recover the amount certified by the engineer, the plaintiff is bound by the
engineer's certificate as to the amount due and cannot go behind that certificate
except on the ground that it is false or was executed through fraud or bad
faith, and the complaint will not be sufficient unless allegations are made·
showing the falsity of the certificate or the fraud or bad faith of the engineer.

Accordingly, where the engineer has classified extra work at unit prices under
the contract, the plaintiff cannot recover under another provision of the contract
on the basis of the cost of the extra work plus ten per cent, for the engineer's
classification is binding on the plaintiff.

The plaintiff cannot assert that the final certificate is based on an erroneous
construction of the contract, since the parties agreed that the engineer had
the right to order the extra work and to classify it if it were subject to classification
at the unit prices, and his classification cannot be set aside unless the certificate
is successfully attacked on the ground of falsity or fraud.

Moreover, there was not in this case any evidence to warrant the setting aside
of the certificate classifying the extra work, since all that the evidence shows
is that there was a difference of opinion between the plaintiff and the engineer
as to whether or not the extra work was subject to classification under the
contract at unit prices, and the evidence warrants the conclusion that the
engineer in each instance properly classified the work and that the defendant
fully paid for the work so classified.

The defendant is not liable for the premiums paid by the plaintiff for workmen's
compensation insurance.

APPEAL by the plaintiff, E. E. Smith Contracting Company,
from an order of the Supreme Court, made at the New York Special
Term and entered in the office of the clerk of the county of New
York on the 21st day of March, 1921, as resettled by an order
entered in said clerk's office on the 17th day of May, 1921, in so far
as said order grants defendant's motion to dismiss its complaint
in reference to several so-called insurance claims, and also from
a judgment entered in said clerk's office on the 15th day of March,
1921, upon the verdict of a jury rendered in part by direction of the

court in so far as said judgment fails to provide or adjudge that the plaintiff recover the amount of said insurance claims.

Appeal by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 15th day of March, 1921, as resettled by an order entered in said clerk's office on the 16th day of May, 1921, upon the verdict of a jury rendered in part by direction of the court, and also from an order entered in said clerk's office on the 21st day of March, 1921, as resettled by an order entered on the 17th day of May, 1921, in so far as it denies the defendant's motion for a new trial made upon the minutes.

*O'Brien, Boardman, Parker & Fox* [H. H. Ramsay of counsel; *Philip W. Boardman* with him on the brief], for the plaintiff.

*George P. Nicholson, Corporation Counsel* [Elliot S. Benedict of counsel; *John F. O'Brien* with him on the brief], for the defendant.

MARTIN, J.:

On the 7th day of March, 1913, the plaintiff entered into a contract with the Public Service Commission for the construction of an elevated railroad including stations, about three and one-quarter miles long, commencing two hundred and seventy feet east of Van Dam street and running along Queens boulevard, Greenpoint, Silkman and Roosevelt avenues to a point on Roosevelt avenue about seventy feet east of Sycamore avenue.

About 4,000 feet of the railroad situated on the Queens boulevard was to be constructed of reinforced concrete, the remaining part being ordinary elevated railroad construction.

Plaintiff commenced work in April, 1913. The date for completion was extended from time to time. The work was not finished until the fall of 1916.

The final estimate of the value of work performed was made on March 29, 1918, by the engineer of the Public Service Commission. It shows $2,429,799.64 previously estimated; $6,206.65, the amount of the final estimate remaining unpaid; $50,000 of retained percentages in corporate stock deposited by the plaintiff with the comptroller, and $692.66 of retained percentages in cash.

Plaintiff refused to accept the amount shown to be due by the final certificate or to accept a return of its stock, having previously filed a claim for a large amount based upon allegations of damage and failure to properly classify work performed. This action was then brought to recover the amount which the plaintiff asserted to be still due.

Judgment was given for the following: Balance due as shown by final certificate, $6,206.65; retained percentage in corporate

stock, $50,000; retained percentage in cash, $692.66. These items were not contested by the city.

The court submitted to the jury a number of additional claims and the jury found a verdict for the plaintiff upon the following: Dressing exterior of reinforced concrete structure, $34,734.28; increased cost of fabricating, erecting and transporting by lighter extra or unclassified steel, $18,988.12; increased cost of unloading steel due to traction feed wire, $468.50; extra cost of placing concrete in mezzanines, $74,745.22. All of these items had been classified by the engineer and paid for at the unit price with the exception of the one for increased cost of unloading steel due to traction feed wire. The amounts here allowed are cost plus ten per cent after deducting the amount already paid by the city therefor. The claim for increased cost of unloading steel was for damage alleged to have been caused by the city in permitting a feed wire to be placed along the line of the work in such a manner as to obstruct or interfere with the plaintiff's operations.

The court directed a verdict for the following amounts: Waterproofing, $7,574.41; ducts rejected, $14.44; cutting panel in abutment, $7.16; cost of making sample column, $61.29; moving plant, $195.24; cost of rubbing jack arches, $1,193.27; increased cost of fabricating steel for Fiske avenue station, $4,747.03; Fiske avenue station wire, $207.64; extra cost of plans made by American Bridge Company, $423.50; cost of Tarvia pavement, $106.76. Of these items, several were classified by the engineer and paid for by the city at unit prices. The amount allowed in each instance by the court was cost plus ten per cent, after deducting the amount already paid for same.

A number of these claims for which the court directed a verdict were solely for damages for alleged breach of contract, and were not the subject of classification. Of these items, included in the directed verdict, the following were classified by the engineer and paid for by the city at unit prices and the recovery is for the amount the jury found to be the cost plus ten per cent, after deducting the amount already paid by the city: Waterproofing, $7,574.41; cutting panel in abutment, $7.16; cost of making sample column, $61.29; cost of rubbing jack arches, $1,193.27; increased cost of fabricating material for Fiske avenue station, $4,747.03; cost of Tarvia pavement, $106.76.

The following were not ordered by the engineer, but were allowed as damages for breach of contract: Ducts rejected, $14.44; moving plant, $195.24; removing Fiske avenue station wire, $207.64; extra cost of plans made by American Bridge Company, $423.50.

Plaintiff has appealed from the judgment and order only in so far as the dismissal relates to what are known as insurance claims, consisting of two items, one for $310.36, and the other for $7,675.27.

The complaint herein sets forth one cause of action only. Both plaintiff and defendant appear to have properly adopted the theory that under the terms of this contract the engineer had the right to make changes in the plans, and, if found necessary, to order extra or additional work.

The construction of the contract made by the engineer having been adopted by the parties, the plaintiff very properly brought its action to recover upon the contract and not for a breach thereof.

In many instances the plaintiff seeks to recover the cost of the work plus ten per cent. The city paid for this work at the unit prices set forth in the contract, but refused to pay cost plus ten per cent.

The plaintiff asserts that it is not bound to accept the classification of the engineer or payment for the work at unit prices. The contract provides for such a contingency in section XII thereof:

" In case any work or materials shall be required to be done or furnished in or about the works — whether specified herein or indicated on the plans or not — which are not susceptib e of classification under the Schedule of Unit Prices, the contractor shall and will if ordered by the engineer do and perform such work and furnish such materials at and for the actual and necessary net cost in money to the contractor for labor and for material, where new material is used, and in addition thereto ten per centum (10%) of such net cost for the use of tools and plant, superintendence and all other expenses incidental to the performance of such work and the furnishing of such material, and the contractor shall have no further claim in excess of the above; but this method of payment shall not apply to the performance of any work or the furnishing of any material which in part or in whole is susceptible of classification under such schedule, which work or material shall be paid for in part or in whole, as the case may be, at the unit price given in such schedule, except as herein otherwise expressly provided.

" In case any work or material shall be required to be done or furnished under the provisions of this Article for cost plus ten (10%) per centum the contractor shall at the end of each day during the progress thereof furnish to the engineer daily time slips showing the name and number of each workman employed thereon, the number of hours employed thereon, the character of work he is doing and the wages paid or to be paid to him and also a daily memorandum of the material delivered on the work showing the amount and character of such material, from whom purchased and

the amount paid or to be paid therefor. If required, the contractor shall produce any books, vouchers, records or memoranda showing the work and materials actually paid for and the actual prices therefor."

By sections XIV and XV it was provided that changes or alterations might be made and additional work ordered provided payment was made therefor under the terms of the contract.

The plaintiff, although suing on but one cause of action was permitted to recover on three distinct theories.

Plaintiff recovered the amount certified as due by the engineer in accordance with the terms of the contract. The recovery to that extent was proper and was not contested by the defendant.

The plaintiff was then permitted to recover additional compensation for work ordered by the engineer and classified by him and paid for by defendant under the schedule of unit prices. The contention of the plaintiff is that it was not bound by the classification of the engineer or the payment in accordance therewith, but was entitled to cost plus ten per cent.

The third theory upon which plaintiff has recovered is that of damages for breach of contract. The recovery on this branch of the case was upon items not ordered by the engineer but alleged to have become necessary by reason of a breach of the contract by the defendant.

The theory on which recovery is permissible must be ascertained from the complaint. It sufficiently sets forth but one cause of action to recover the amount certified by the engineer to be due upon the contract. It also attempts to attack his certificate because of failure to properly classify work performed.

In attacking the certificate the plaintiff was confronted with sections XXIV and XXXVIII of the contract, the usual clauses giving the engineer the power to decide all questions of classification and measurement. These sections provide as follows:

"XXIV. To prevent disputes and litigations, the engineer shall in all cases determine the amount, quality acceptability and fitness of the several kinds of work and materials which are to be paid for under this contract; shall determine all questions in relation to the works and the construction thereof, and shall in all cases determine every question which may arise relative to the fulfillment of this contract on the part of the contractor. His determination and estimate shall be final and conclusive upon the contractor, and in case any question shall arise between the parties hereto, touching this contract, such determination and estimate shall be a condition precedent to the right of the contractor to recover any money under this contract."

"XXXVIII. Whenever, in the opinion of the engineer, the

contractor shall have completely performed this contract on his part, the engineer shall so certify, in writing, to the Commission, and in his certificate shall state, from actual measurements, the whole amount of work done by the contractor, and also the value of such work under and according to the terms of this contract. On the expiration of ninety (90) days after the acceptance by the Commission of the work herein agreed to be done by the contractor, and the filing of a certificate of the completion and acceptance of the work in the office of the Comptroller, signed by the engineer and the Commission, the City shall pay to the contractor the amount remaining after deducting from the amount or value stated in the last-mentioned certificate, all such sums as shall theretofore have been paid to the contractor under any of the provisions of this contract, and also any sum or all such sums of money as by the terms hereof the City is or may be authorized to reserve or retain; provided, that nothing herein contained shall be construed to affect the right, hereby reserved, of the Commission to reject the whole or any portion of the aforesaid work, should the said certificate be found, or known to be, inconsistent with the terms of this contract, or otherwise improperly given. All prior certificates upon which partial payments may have been made, being merely estimates, shall be subject to correction in the final certificate, which final certificate may be made without notice thereof to the contractor, or of the measurements upon which it is based."

In accordance with the terms of the contract the engineer classified the work which the plaintiff now seeks to have reclassified.

Although the complaint does allege an erroneous construction of the contract, the allegations are insufficient, for the reason that classification is the sole question involved. This court has indicated what must be alleged to state a cause of action, the basis of which is an attack on the certificate.

In the case of *Thilemann* v. *Mayor* (66 App. Div. 455, 457) Mr. Justice PATTERSON, writing for this court, said: " It was held in *Smith* v. *Mayor* (12 App. Div. 391) that in the face of a certificate relating to the quantity of filling done on a contract of a character similar to that involved in this action, the contractor could not recover for an extra amount of filling unless he alleged and proved facts which would impeach the certificate as false, fraudulent or made in bad faith, or unless the final certificate was based upon an erroneous construction of the contract. (*Burke* v. *Mayor,* 7 App. Div. 128.)"

This case appears to have been tried upon the theory that the complaint was for work, labor, services and materials furnished;

that if the contractor was dissatisfied with the classification made by the engineer, he might bring an action to recover upon the basis of what he believed to be a proper classification; that the question of classification might be submitted to the jury as a question of fact, or decided by the court as a question of law. The binding effect of the final certificate seems to have been overlooked.

In the recent case of *Daniels Co.* v. *City of New York* (196 App. Div. 856) Mr. Justice LAUGHLIN, passing on a contract similar to the one here (at p. 864), said: " Although a contractor is not concluded by an erroneous construction placed on the contract by the engineer, it is well settled that in the absence of fraud or bad faith the determination of the engineer and his certificate are final with respect to the quality of material offered for use by the contractor and with respect to the quantity and classification of material as the basis for computing the amount to which the contractor is entitled. (*Whiteman* v. *Mayor, etc.*, 21 Hun, 117; *Sweet* v. *Morrison*, 116 N. Y. 19; *Neidlinger* v. *Onward Const. Co.*, 107 App. Div. 398; affd., 188 N. Y. 572; *Allen* v. *City of Oneida*, 210 id. 496; *United States* v. *Cooke*, 207 Fed. Rep. 682; *Cook* v. *Foley*, 152 id. 41.)"

In *Smith* v. *Mayor* (12 App. Div. 391, 394) Mr. Justice PATTERSON said: " Being thus narrowed down to the question of fact above referred to, it is indisputable that, from the terms of the contract, the engineer's return and certificate, unless they can be successfully attacked, furnish conclusive evidence of the measurements in accordance with which the plaintiffs would be entitled to payment. As was said in *O'Brien* v. *The Mayor* (15 N. Y. Supp. 520), ' When a certificate is given, it is conclusive upon the parties, and, in the absence of proof of corruption, bad faith or misconduct on the part of the person designated, or palpable mistake appearing on the face of the certificate, neither party can be allowed to prove that such designated person decided wrongly as to the law or facts.' (*Byron* v. *Low*, 109 N. Y. 291; *Sweet* v. *Morrison*, 116 id. 32; *Phelan* v. *The Mayor*, 119 id. 86; *Pres., etc., D. & H. Canal Co.* v. *Pa. Coal Co.*, 50 id. 266.) The same ruling was made in *Wyckoff* v. *Meyers* (44 N. Y. 143); *Whiteman* v. *The Mayor* (21 Hun, 117), citing *Butler* v. *Tucker* (24 Wend. 447,) and other cases. We have recently had occasion to consider the same question in the case of *Burke* v. *The Mayor* (7 App. Div. 128), where it is said that where the question does not relate to misconstruction of the contract, but merely with respect to the amount of work done and materials furnished, the engineer's certificate, if made in good faith, is final, when, as in this case, it is made so by the terms of the contract. It is upon this view of the case that the

plaintiffs have based their action. Recognizing it, they have alleged that the engineer in charge of the work has refused to certify properly the amount of work done thereunder, but has made and filed ' a wrong, false and untrue certificate,' and has refused, upon proper demand, to file a proper certificate, and ' that the said certificate made by the said engineer in charge of the work under said contract was false, fraudulent, untrue and made in bad faith.' It was necessary for the plaintiffs to prove that allegation before they could remove the obstacle, standing in their way, of the return and certificate made by the engineer. Of its being false, fraudulent or made in bad faith, there is not one word of proof nor that the computations or measurements of the engineer have resulted in any way from a misconstruction of the terms of the contract as was or might have been the fact in the case of *Burke* v. *The Mayor* (*supra*), and it was upon the theory that the engineer may have misconstrued the contract in that case that it was held that it should have gone to the jury."

In the leading case of *Sweet* v. *Morrison* (116 N. Y. 19, 34) the court, by Judge VANN, said: " We regard the estimate of the chief engineer as conclusive, and that, in the absence of proof of corruption, bad faith or misconduct on his part, or palpable mistake appearing on the face of the estimate, neither party can be allowed to prove that he decided wrong as to the law or facts. (*Perkins* v. *Giles*, 50 N. Y. 228)."

In *Horan* v. *Mason, Nos. 1, 2, 3* (141 App. Div. 89, 94) Mr. Justice CARR said: " Where a party seeks to attack as fraudulent a certificate given by his engineer or architect, under a contract which in express terms makes such certificate final or conclusive, he must plead the fraud of the engineer or architect affirmatively. (*New York Building Co.* v. *Springfield Elevator Co.*, 56 App. Div. 294; *Everard* v. *Mayor*, 89 Hun, 425; *Sweet* v. *Morrison*, 116 N. Y. 19; *Sewer Commissioners* v. *Sullivan*, 11 App. Div. 472; affd., 162 N. Y. 594; *Smith* v. *Mayor*, 12 App. Div. 391.)"

Referring to a question similar to that now before us it was said in the *Daniels* case: " We think the court might have ruled against the plaintiff on this point as a matter of law."

Plaintiff is not in a position to assert that the final certificate is based upon an erroneous construction of the contract. Both sides adopted the engineer's construction. They agree he had a right to order this work and that it was his duty to classify it when performed. If susceptible of classification at the unit prices, it was his duty to so classify it. If not, it was the duty of the engineer to certify that it be paid for at cost plus ten per cent. That is the theory of the complaint.

The rule is well settled that, before the classification of the engineer may be set aside or upset, his certificate must be successfully attacked. It must be shown to be false, fraudulent or made in bad faith, or based upon an erroneous construction of the contract. (*Burke* v. *Mayor, supra.*)

This case was submitted to the jury on an erroneous theory. Moreover, there was no evidence to warrant the jury in setting aside this certificate, assuming the complaint stated a cause of action. The most favorable inference to be drawn from the evidence was that there were instances where the parties differed with reference to the classification. The witnesses for plaintiff admitted that in some instances there was just ground for such difference. In a case where there is doubt as to what the classification should be, the engineer's decision and certificate are final. It is his duty to decide such questions, and his certificate cannot be said to have been made in bad faith merely because there is a difference of opinion. Assuming that there was a difference of opinion, the very purpose of the contract was to lodge the power to classify in the engineer, and to make his classification final, binding and conclusive in the absence of fraud or bad faith.

In *United States* v. *Cooke* (207 Fed. Rep. 682, 685) the court held: " It is entirely competent for parties to a contract of this kind to make it a term of their contract that the decision of an engineer or other officer of all or specified matters of dispute that may arise during the execution of the contract shall be final and conclusive as between them, and in the absence of fraud or mistake so gross as to necessarily imply bad faith the decision of the umpire so selected will not be subjected to the revisory power of the courts. *United States* v. *Gleason,* 175 U. S. 588, 602, 20 Sup. Ct. 228, 44 L. Ed. 284. And before the contractor can recover any sum in excess of the sum allowed in the final certificate of the engineer, he must show that the latter, in making his final estimate, was guilty of collusion or fraud, or exhibited such an arbitrary and wanton disregard of the rights of the contractor under the contract as to be equivalent to fraud, or that he committed errors or mistakes to the prejudice of the contractor so palpable and so gross as to leave no doubt in the mind of the court that a grave injustice has been done. *Fruin-Bambrick Const. Co.* v. *Ft. Smith & W. R. Co.* (C. C.) 140 Fed. 465, 468.

" The reasons for this rule are obvious. As said by the court in *Choctaw & M. R. Co.* v. *Newton,* 140 Fed. 225, 233, 71 C. C. A. 655, 663, in speaking of a similar contract: ' Such stipulations are evoked out of the experience of railroad companies in such construction work. From its very nature, extending over a long

line of road, with diversified topography of country, encountering many varieties of geological formation, and difficulties impossible to anticipate, the variant views and notions of contractors and subcontractors respecting the infinite details of the work, the classification and measurement of material, the prevention of incessant wrangles over the work, with its annoyances and litigation, justified the railroad company in requiring as a condition precedent to letting the construction of this work, the acceptance of the foregoing provisions of the contract. The contractor is presumed to protect himself against possible loss resulting from any adverse judgment of the engineer by the amount of his bid; and when litigation arises over the decisions and award of such an umpire the courts cannot, without making a new contract for the parties, disregard such positive provisions, or set aside the action of the umpire, except for the most grave and cogent reasons.'

" Viewing the testimony in the light of this established rule, I am satisfied that the decision or classification made by the engineers of the Reclamation Service must stand. It is not charged that they were guilty of any actual fraud, nor can I find such gross errors or mistakes as would of necessity imply fraud or bad faith on their part." (See, also, *Cook* v. *Foley*, 152 Fed. Rep. 41; *Choctaw & M. R. Co.* v. *Newton*, 140 id. 225.)

An examination of the entire record shows that the engineer in each instance properly classified the different items of work and that the defendant fully paid for the work so classified.

We, have, therefore, come to the conclusion that the complaint should have been dismissed, except as to the following items: $6,206.65, the amount shown to be due on the final certificate; $50,000 of retained percentages in corporate stock, and $692.66 retained percentage in cash.

The defendant's appeal with reference to the insurance items brings up for review the question whether the city is liable for the premiums paid on Workmen's Compensation Insurance. The case of *Callanan* v. *State* (113 Misc. Rep. 267, 271; affd., 195 App. Div. 944; affd., 234 N. Y. 522) is authority for holding that there may not be a recovery against the city on these items.

The judgment should, therefore, be modified as herein indicated and the said judgment as so modified, and the order appealed from affirmed, without costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Judgment modified as indicated in opinion, and as so modified the judgment and order appealed from affirmed, without costs. Settle order on notice.